Brandi **CHRISTENSEN**, Appellant,

v.

**FARMERS INSURANCE COMPANY, INC., Respondent.**

No. ED 93162.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 2, 2010.

David C. Knieriem, Clayton, MO, for appellant.

Christopher J. Carpenter, Kansas City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Brandi Christensen appeals the trial court's entry of summary judgment in favor of Farmers Insurance Company in her action seeking $75,000 in underinsured motorist coverage under her Farmers insurance policy. Specifically, Ms. Christensen claims that the trial court erred in granting Farmers' motion for summary judgment because the insurance policy was ambiguous with regard to whether it provided underinsured motorist coverage. We affirm.

### Factual and Procedural Background

On August 19, 2007, Ms. Christensen sustained injuries when her motorcycle collided with a vehicle driven by Scott McGraw, an underinsured motorist whose insurance carrier tendered to Ms. Christensen its policy limit of $25,000. Ms. Christensen sought the balance of her damages from her insurance carrier, Farmers. Farmers declined her request for payment.

At the time of the accident, Ms. Christensen was covered by a Farmers E–Z Reader Motorcycle Policy ("Motorcycle Policy") that provided $100,000 per person, $300,000 per accident of uninsured motorist (UM) coverage. Ms. Christensen claims that the Motorcycle Policy provided underinsured motorist (UIM) coverage as well as UM coverage.

■ The Motorcycle Policy consisted of a declarations page,[1] policy provisions, and endorsements. The declarations page outlined Ms. Christensen's insurance coverage as follows:

**COVERAGES *ENTRIES IN THOUSANDS OF DOLLARS.**

| Uninsured Motorist | | UNDERinsured Motorist | |
|---|---|---|---|
| Bodily Injury | P.D. | Bodily Injury | P.D. |
| 100* 300* | NC | NC* NC* | NC |
| Each Person Each Occurrence | | Each Person Each Occurrence | |

On the reverse side of the declarations page, under the heading "COVERAGE DESIGNATIONS," the policy noted, " 'NC' or 'NOT COV' means 'NOT COVERED.' "

In the policy provisions, under "Part II—Uninsured Motorist," Farmers set forth the terms of the Motorcycle Policy's UM coverage, stating: "COVERAGE C— UNINSURED MOTORIST COVERAGE: We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." (emphasis omitted). Part II goes on to define UM coverage to include UIM coverage. Specifically, Item 3b under the heading "Additional Definitions Used In This Part Only," defined the term "uninsured motor vehicle" as "a motor vehicle which is: Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorists Coverage shown in the Declarations." (emphasis omitted).

Endorsement E1105j (the "Endorsement"), entitled "Endorsement Amending Uninsured Motorist Coverage," purported to delete item 3b from Part II of the Motorcycle Policy.[2] The Endorsement

---

1. A declarations page states in an abbreviated form the essential terms of the insurance policy. *Todd v. Mo. United Sch. Ins. Council,* 223 S.W.3d 156, 160 (Mo. banc 2007).

2. The Endorsement provided:
 It is agreed that under Part II—Uninsured Motorist, the following changes apply:
 1. The words "Including Underinsured Motorist Coverage," if shown in the title "Coverage C," are deleted from the title "Coverage C." (Does not apply to E–Z Reader Motorcycle Policy.)
 2. Under Part II—Uninsured Motorist, the sentence in the second paragraph which reads "if no agreement is reached, the decision will be made by arbitration." is deleted.

3. Item 3b of "Additional Definitions Used In This Part Only" is deleted.
4. Item 4c of "Additional Definitions Used In This Part Only" is deleted.
5. Item 4 of "Limits of Liability" is added.
 4. The limits for "each person" and "each occurrence" include all sums paid under "Part I—Liability" but do not include any amount paid or payable under:
 a. "Part III—MEDICAL," "Coverage E—Medical Expense Coverage"; or
 b. Any Workers' Compensation Law, Disability Benefits Law or similar law.
6. The "Voluntary Arbitration" clause is deleted. (Does not apply to E–Z Reader Motorcycle Policy.)

read: "It is agreed that under Part II—Uninsured Motorist, the following changes apply: ... 3. Item 3b of 'Additional Definitions Used In This Part Only' is deleted."

On December 29, 2008, Ms. Christensen filed suit claiming that she was entitled to UIM benefits under the Motorcycle Policy for damages sustained in the August 19, 2007 collision and seeking from Farmers $75,000 in UIM protection. Farmers filed a motion for summary judgment on the grounds that the Motorcycle Policy did not provide UIM coverage. The trial court granted Farmers' motion for summary judgment. Ms. Christensen appeals.

### Standard of Review

The grant of summary judgment is an issue of law that we review *de novo.* *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007). In considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the party against whom summary judgment was entered. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when a party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Missouri Supreme Court Rule 74.04(c)(6); *ITT,* 854 S.W.2d at 376.

### Discussion

In her sole point on appeal, Ms. Christensen claims that the trial court erred in granting summary judgment in favor of Farmers because the Motorcycle Policy was ambiguous. In the first of two sub-points, Ms. Christensen argues that the Endorsement did not effectively remove UIM coverage from the Motorcycle Policy because it appeared to limit application of Paragraph 3, which deleted UFM coverage, to automobile policies.

 The determinative issue is whether the Motorcycle Policy is ambiguous with respect to UIM coverage. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Jones v. Mid–Century Ins. Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009) (quotation omitted). In determining whether language is ambiguous, we consider the language in light of the meaning that would normally be understood by the layperson who bought and paid for the policy, and we consider whether the language is ambiguous by reading the policy as a whole. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Maune,* 277 S.W.3d 754, 757–58 (Mo.App. E.D.2009). We construe ambiguous policy language against the insurer. *Jones,* 287 S.W.3d at 690. Absent an ambiguity, an insurance policy must be enforced according to its terms. *Id.* "Courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists." *Todd v. Mo. United Sch. Ins. Council,* 223 S.W.3d 156, 163 (Mo. banc 2007).

 There is no statutory or public policy requirement for UIM coverage in Missouri. *Melton v. Country Mut. Ins. Co.,*

---

The following applies only if this is an E–Z Reader Motorcycle Policy:

7. Paragraph 1 under "Other Insurance" is deleted.
8. The words "Except as provided in paragraph 1 above" are deleted from paragraph 2 under "Other Insurance."

9. The "Arbitration" clause is deleted.
This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all terms of the policy.

75 S.W.3d 321, 327 (Mo.App. E.D.2002). "Absent a statute or public policy requiring coverage, a court will not use its inventive powers to rewrite a policy to provide coverage for which the parties never contracted." *Id.*, quoting *Lang v. Nationwide Mut. Fire Ins.*, 970 S.W.2d 828, 830 (Mo. App. E.D.1998).

An insurance contract includes the declarations, the form policy, and any endorsements and definitions. *Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 108 (Mo.App. E.D.2009). When the declarations page clearly communicates the coverage provided by the insurance contract, and the other policy provisions neither expressly change the coverage nor "reflect a different intention than that clearly expressed on the declarations page," the declarations page controls.[3] *Jackson v. Gen. Accident Ins. Co.*, 720 S.W.2d 428, 429 (Mo.App. E.D.1986); *see also Niswonger*, 992 S.W.2d at 320 (noting that an important factor in cases considering whether UM and UIM coverage are impermissibly tied together is whether the coverages and premiums are stated separately on the declarations sheet); *cf. Haulers Ins. Co., Inc. v. Wyatt*, 172 S.W.3d 880, 886 (Mo. App. S.D.2005) (where the declarations page contained two coverage limits—$500,000 per accident and $1,500,000 other than auto aggregate—the policy provisions made clear that the amount of applicable coverage for the accident in question was $500,000).

In the instant case, it is undisputed that the declarations page clearly stated that the policy did not provide UIM coverage. In the "Coverages" section of the declarations page, under the heading "UNDERinsured motorist" appeared the notation "NC," indicating that UIM was not covered. The reverse side of the declarations page provided: "This Declarations page when signed by us, becomes part of the policy numbered on the reverse side. It supersedes and controls anything to the contrary. It is subject to all other terms of the policy." Thus, the declarations page made clear that the Motorcycle Policy did not provide UIM coverage and was intended to supersede any contrary policy provisions. Furthermore, to the extent a provision in the form policy indicated that the Motorcycle Policy provided UIM coverage, the Endorsement deleted that provision. As a result, the declarations page was consistent with the policy provisions as amended by the Endorsement. We therefore find no ambiguity in the Motorcycle Policy that would authorize UIM coverage where the declarations page expressly excluded such coverage. *See Jackson*, 720 S.W.2d at 429.

Despite the declarations page's unambiguous statement that the Motorcycle Policy did not provide UIM coverage, Ms. Christensen bases her argument on the Endorsement, which she claims did not unambiguously inform the policy holder that it was removing UIM coverage from the policy provisions of the Motorcycle Policy. We disagree. The Endorsement, entitled "Endorsement Amending Uninsured Motorist Coverage," unequivocally stated that "Item 3b of 'Additional Definitions Used In This Part Only' is deleted." Item 3b was the sole policy provision re-

---

**3.** The declarations page has been held to define the coverage afforded the insured because it is the one page of the policy likely to be read by the insured and to contain the terms requested by the insured. SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 49:25 (4th ed.2000); *see also Zacarias v.* *Allstate Ins. Co.*, 168 N.J. 590, 775 A.2d 1262, 1269 (2001); *Sentry Ins. Co. v. Grenga*, 556 A.2d 998, 1000 (R.I.1989). Thus, "when the declarations page, standing alone, is clear, ... its terms will control over another conflicting provision." WILLISTON ON CONTRACTS, § 49:25.

ferring to UIM. By deleting UIM from the definition of UM, the Endorsement removed UIM coverage from the policy.

Ms. Christensen also argues that the Endorsement was ambiguous because the only place where the words "underinsured motorist coverage" appeared in the Endorsement was in Paragraph 1, which provided:

> The words "(Including Underinsured Motorist Coverage)," if shown in the title "Coverage C," are deleted from the title "Coverage C." (Does not apply to E–Z Reader Motorcycle Policy).

Ms. Christensen contends that because the words "underinsured motorist coverage" appeared in the same provision as the limitation "Does not apply to E–Z Reader Motorcycle Policy," a reasonable construction is that the UIM coverage stayed in the policy. However, the fact that Paragraph 1 did not apply to the Motorcycle Policy did not affect the application of Paragraph 3, which contained no limiting language. Paragraph 3 applied to the Motorcycle Policy and its effect was to delete UIM coverage.

In her second subpoint, Ms. Christensen claims that the Motorcycle Policy provided UIM coverage because Farmers failed to incorporate into the policy the Endorsement purporting to eliminate UIM coverage from the policy provisions. Specifically, Ms. Christensen contends that the Endorsement was not properly incorporated into the policy because it was issued contemporaneously with the policy. In support of her argument, Ms. Christensen points to the policy provision governing policy changes, which stated: "This policy with the Declarations includes all agreements between you and us relating to this insurance. No other change or waiver may be effected in this policy except by endorsement or new policy issued by us."

Here, the Endorsement was attached to the Motorcycle Policy at the time of its issuance, and the declarations page expressly incorporated the Endorsement by listing "E1105j" under the heading, "Endorsement Numbers." The Declarations page also incorporated the purpose and effect of the Endorsement by stating that the Motorcycle Policy did not cover underinsured motorist liability. The Endorsement itself provided, "This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy." Likewise, the Index of Policy Provisions stated, "ANY ADDITIONAL PROVISIONS AFFECTING YOUR POLICY ARE ATTACHED AS 'ENDORSEMENTS.'" When endorsements are "attached to the policy at the time of its issuance with authority of the company and in accordance with the agreement of the parties, they are part of the contract...." *Empire Fire and Marine Ins. Co. v. Brake,* 472 S.W.2d 18, 23 (Mo.App. 1971). Accordingly, we find that Farmers properly incorporated the Endorsement into the policy.

### Conclusion

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.