Lyle **BROWNING, et al., Respondents,**

v.

**GUIDEONE SPECIALTY MUTUAL INSURANCE COMPANY, Appellant.**

No. WD 72484.

Missouri Court of Appeals, Western District.

June 7, 2011.

898

Kevin P. Schnurbusch and Maureen A. McMullan, St. Louis, MO, for appellant.

Ronald K. Barker, Lee's Summit, MO, for respondents.

Before Division One: GARY D. WITT, Presiding Judge, JAMES E. WELSH, Judge and ALOK AHUJA, Judge.

GARY D. WITT, Judge.

This is a declaratory judgment and vexatious refusal to pay action based on disputed insurance coverage for an accident that occurred when a motorcycle was run off the road by another vehicle. GuideOne Specialty Mutual Insurance Company ("GuideOne"), insured the motorcycle and appeals the judgment of the trial court, which after a bench trial found in favor of Lyle and Linda Browning ("Plaintiffs") as it pertained to Plaintiffs' declaratory judgment and vexatious refusal to pay action against GuideOne. For the reasons explained herein, we reverse and remand.

**Factual Background**

In August 2002, Plaintiffs were riding their motorcycle on B Highway in Benton County, Missouri, when Joseph Hagston crossed the center line thereby forcing Plaintiffs off the road and into the ditch because of Hagston's undisputed negligence. Plaintiff Linda Browning sustained injuries as a result of this accident, and it is undisputed that her medical bills eventually exceeded $150,000.00.

Hagston carried State Farm liability insurance on the date of the accident, with limits of $100,000 per person and $300,000 per accident. Linda Browning accepted the sum of $100,000 from State Farm for Hagston's liability in causing her damages, which represented the total coverage available pursuant to the State Farm policy.

On the date of the accident, Plaintiffs also had a motorcycle insurance policy, issued by GuideOne ("Policy"). Plaintiffs filed the instant lawsuit against GuideOne in Benton County. In Count One of the Petition, Plaintiffs alleged that under the Policy, there was Underinsured Motorist ("UIM") coverage of $50,000.00 for each person and $300,000 for each accident. The Petition went on to allege that Plaintiffs complied with all the conditions contained in the policy and GuideOne refused to pay benefits under the policy claiming that there is no coverage under the policy for UIM claims. In Count Two, Plaintiffs alleged that GuideOne denied coverage under the Policy without reasonable and just cause and that, therefore, this constituted a vexatious refusal to pay benefits under the Policy.

After a bench trial, the trial court found in favor of Plaintiffs on both of their claims. In its judgment, the Court found that the Policy is ambiguous as it relates

to Uninsured/Underinsured motorist coverage and resolved this "ambiguity" in favor of coverage as a matter of law. The trial court found GuideOne was liable to Plaintiffs pursuant to the Policy's uninsured coverage limit of $50,000. Furthermore, as it pertained to Plaintiffs' vexatious refusal to pay claim, the trial court found that GuideOne refused to pay the loss without reasonable cause or excuse; therefore, the Court ordered the following pursuant to Section 375.420 [1]: "Statutory penalties are calculated as $8,047.00. Prejudgment interest calculated to the date of Judgment (March 30, 2010), is $26,295.82. Plaintiffs' reasonable attorneys' fees and expenses are $30,295.82." In total, the trial court entered a judgment in favor of Plaintiffs and against GuideOne in the amount of $114,638.64 in addition to the costs which were assessed against GuideOne. GuideOne now appeals.

Further details will be outlined in the analysis section below as necessary for the resolution of this appeal.

## Standard of Review

■ This court reviews a bench-tried case under the standard established by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Rissler v. Heinzler,* 316 S.W.3d 533, 536 (Mo.App. W.D.2010). Under this standard, the "trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law." *Id.* (quo-

tation omitted). "This court must view the evidence in a light most favorable to the judgment and disregard all contrary evidence and permissible inferences." *Id.*

■ However, because the primary dispute on appeal pertains to the interpretation of an insurance policy, we are not restricted to this standard of review in that context. "In a court-tried declaratory judgment action, interpretation of an insurance policy is a question of law and, where resolution of a controversy is a question of law, the trial court receives no deference." *Foremost Signature Ins. Co. v. Montgomery,* 266 S.W.3d 868, 871 (Mo. App. E.D.2008). "We apply the *Murphy v. Carron* standard only when there is an ambiguity within the policy necessitating a factual determination." *Id.*

## Analysis

In Point One, GuideOne argues that the trial court erred in finding that the GuideOne insurance policy was ambiguous and provided UIM coverage to Plaintiffs because, as a matter of law, the policy is not ambiguous under its plain language and no UIM coverage was provided. We agree.[2]

In *Todd v. Missouri United School Ins. Council,* 223 S.W.3d 156, 160 (Mo. banc 2007), the Missouri Supreme Court outlined the following relevant principles in interpreting the Policy:

"The general rules for interpretation of other contracts apply to insurance contracts as well. The key is whether the contract language is ambiguous or un-

---

**1.** Section 375.420 establishes the elements and recoverable damages for a "Vexatious refusal to pay claim" against an insurance carrier. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

**2.** Plaintiffs elected not to participate in this appeal even to the extent of failing to file a brief. " 'There is no penalty for a respondent

failing to file a brief.' " *Harpagon Mo, LLC v. Clay County Collector,* 335 S.W.3d 99, 101 n. 2 (Mo.App. W.D.2011) (quoting *J.B. Vending Co. v. Hailey,* 77 S.W.3d 48, 50 (Mo.App. S.D.2002)). "That omission, however, requires this court to adjudicate the appellant's claims of error without benefit of whatever argument respondent might have made in response." *Id.*

ambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02 (Mo. banc 1993). When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured. *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983). However, "where insurance policies are unambiguous, they will be enforced as written." *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). "Whether an insurance policy is ambiguous is a question of law." *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999).

It is undisputed that Plaintiff Linda Browning received the maximum coverage ($100,000) from State Farm based on Hagston's undisputed liability in causing the accident. The question before us is whether any provision in Plaintiffs' Policy would provide UIM coverage and cover any of Linda Browning's other damages not covered by State Farm in light of the fact that her medical bills alone eventually exceeded $150,000.

The Eastern District outlined the difference between Uninsured Motorist ("UM") coverage and UIM coverage in *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri:*

> Though similar, **un**insured motorist coverage and **under**insured motorist (UIM) coverage are not the same thing. The former refers to coverage intended to provide a source of recovery for insureds who are legally entitled to recover damages for bodily injury caused by the negligent owner or operator of a completely uninsured motor vehicle. UIM coverage, on the other hand, refers to coverage intended to provide a source of recovery for insureds (up to the insurer's liability limit for such coverage) who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages ... Both uninsured motorist coverage and UIM coverage are in the nature of floating, *personal* accident insurance rather than insurance on a particular *vehicle,* and thus follow the insured individual wherever he goes.

992 S.W.2d 308, 313 (Mo.App. E.D.1999) (citations omitted and emphasis original).

■ Here it is undisputed that, although the Policy contained an endorsement denominated "**UNINSURED MOTORISTS COVERAGE**," it did not contain such an endorsement denominated **underinsured motorist coverage.** The trial court concluded in its Judgment that the Policy "is ambiguous as it related to 'Uninsured/Underinsured' motorist coverage" and that, therefore, this "ambiguity must be resolved in favor of coverage as a matter of law."

While the Judgment in question did not outline the reasons for the trial court's conclusion that the Policy was ambiguous, the Court's "Decision of Court After Bench Trial" illuminates in detail the presumed reasoning for its ruling.[3] Specifically, the trial court stated the following:

> [The Policy] is ambiguous as it relates to underinsured motorist coverage. Part 1, Coverage A (Liability), Limits of Liability (Page 3 of 6) contains the fol-

---

3. The trial court issued a document entitled "Decision of Court After Bench Trial" the day after trial. The court later issued its formal "Judgment." This Court may only review a final order denominated a "Judgment" pursuant to Rule 74.01, however, we choose to refer to the "Decision of Court After Bench Trial" to the extent that it provides this Court with a more detailed analysis of the trial court's thought process in reaching its final Judgment.

lowing language: "We will pay no more than these maximums regardless of the number of insured persons, claims, claimants, or policies or vehicles involved in an accident or loss. Any amount payable under this coverage to or for an injured person may be reduced by any payment made to that person *under any Uninsured or Underinsured Motorist Endorsement attached to this policy.*" (Emphasis added.) There is no exclusion or denial of Underinsured coverage. Subsequently, in the Uninsured Motorist Coverage ... the following language appears: "We do not provide Uninsured/Underinsured Motorist Coverage for punitive or exemplary damages." The ambiguity on the face of the exclusion in the endorsement is that "Uninsured/Underinsured" gives the impression that the endorsement provides both uninsured and underinsured coverages. Nowhere in the endorsement does underinsured coverage appear to be excluded. Both the policy on page 3 and the aforesaid endorsement on page 3 contain "other insurance" provisions limiting defendant's coverage to the proportion of the loss that defendant's coverage bears to the total limits of all applicable insurance. Both the policy language and the endorsements refer to underinsured coverage and the endorsement indicates that both uninsured and underinsured coverage run together ... As the court has found an ambiguity in the policy, that ambiguity must be resolved in favor of coverage as a matter of law.

Decision of Court After Bench Trial, pg. 1–2.

After reviewing the Policy, we conclude that the trial court erred in finding that the Policy was ambiguous as a matter of law. In so concluding, we follow the principles recently announced by the Eastern District in *Christensen v. Farmers Ins.*

*Co., Inc.* pertaining to whether UIM coverage is ambiguous:

> The determinative issue is whether the Motorcycle Policy is ambiguous with respect to UIM coverage. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions. In determining whether language is ambiguous, we consider the language in light of the meaning that would normally be understood by the layperson who bought and paid for the policy, and we consider whether the language is ambiguous by reading the policy as a whole. We construe ambiguous policy language against the insurer. Absent an ambiguity, an insurance policy must be enforced according to its terms. Courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists.

> There is no statutory or public policy requirement for UIM coverage in Missouri. Absent a statute or public policy requiring coverage, a court will not use its inventive powers to rewrite a policy to provide coverage for which the parties never contracted.

307 S.W.3d 654, 657–58 (Mo.App. E.D. 2010). (Internal citations and quotation marks omitted.)

To support its conclusion that the Policy was ambiguous as it pertains to UIM coverage, the trial court points to four distinct provisions of the Policy that we will review in turn. First, the trial court focused on the fact that the Policy stated in its "Limits of Liability" section that its liability was *limited* and that "[a]ny amount payable under this coverage to or for an injured person may be reduced by any payment

made to that person under any Uninsured Motorists or Underinsured Motorists Endorsement *attached to this policy.*" (Emphasis added.) In reviewing the language in question, it should be clear to the average layperson that this language only *limits* benefits, as opposed to extending them in this context. Furthermore, this language is only applicable to the extent one of the Endorsements in question was "attached" to the Policy. Here, it was not disputed that only an UM Endorsement was attached to the Policy, and that no UIM Endorsement was attached to the Policy. Certainly, if the UM Endorsement attached to the Policy was ambiguous as to its application to UIM coverage, the above language may support a finding of coverage, but such is not the case we have before us. Accordingly, we find no ambiguity that the above language somehow extended UIM benefits to the Plaintiffs.[4]

■ The trial court also focused on an *exclusionary* provision contained in the UM Endorsement in order to find that the Policy was ambiguous. Specifically, this Exclusion states "[w]e do not provide Uninsured/Underinsured Motorist Coverage for punitive or exemplary damages." "An exclusion provision in an insurance policy, by definition, excludes risk." *Shelter Mut. Ins. Co. v. Ballew,* 203 S.W.3d 789, 795 (Mo.App. W.D.2006). "It has no function to endow coverage but rather limits the obligation of indemnity." *Id.* Therefore, we conclude that a reasonable layperson would not read this *exclusionary* language as somehow conferring UIM coverage upon the insured. Indeed, this language plainly states that it does *not* provide "Uninsured/Underinsured Motor-

ists Coverage" as it pertains to "punitive or exemplary damages." The endorsement where this language appears is clearly entitled, Uninsured Motorist Endorsement. Nowhere else in the endorsement does it mention, refer or infer any coverage for UIM. We will not rewrite a policy to provide coverage for which the parties never contracted. *Christensen,* 307 S.W.3d at 658.

The trial court also points to two distinct "other insurance" provisions in the Policy in concluding that the policy language is ambiguous, but we fail to see how either provides UIM coverage or somehow creates an ambiguity. The first such provision is in the body of the Policy:

**OTHER INSURANCE**

If there is other insurance that covers your loss, we will pay only that proportion of the loss that our limit of liability bears to the total limits of all applicable insurance.

The second such provision is in the UM Endorsement:

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

The above language is clear and unambiguous that it solely limits coverage in the Policy as it pertains to "Other Insurance," and nowhere does this language somehow suggest that UIM coverage is somehow provided in the Policy.[5]

---

4. While this language may not rise to the level for which we find an ambiguity, it is puzzling why the Policy was not tailored to eliminate the irrelevant language regarding UIM coverage.

5. While it is true that there is a line of Missouri case law finding ambiguity in similar "other insurance" clauses as it pertains to "stacking" or offsetting other insurance policies, this issue need not detain this Court.

Additionally, the trial court focused on the fact that the policy does not provide an exclusion or denial of UIM coverage. We find no authority in Missouri that stands for the proposition that the failure to exclude UIM coverage in a vehicular insurance policy alone somehow demonstrates that the parties intended to contract for UIM coverage because "Missouri statutes do not ... mandate *underinsured motorist* coverage." *Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). "An insurance contract includes the declarations, the form policy, and any endorsements and definitions." *Christensen v. Farmers Ins. Co., Inc.*, 307 S.W.3d 654, 658 (Mo.App. E.D.2010). "When the declarations page clearly communicates the coverage provided by the insurance contract, and the other policy provisions neither expressly change the coverage nor reflect a different intention than that clearly expressed on the declarations page, the declarations page controls." *Id.* Here, the declarations page clearly stated the specific terms under which UM Coverage was provided and *did not provide that UIM coverage was extended in the Policy.* Based on all the foregoing, we find nothing in the Policy that "changed" the declarations page or reflected a "different intention" anywhere else in Policy. *See Christensen*, 307 S.W.3d at 658 ("In the instant case, it is undisputed that the declarations page clearly stated that the policy did not provide UIM coverage.").[6]

For all of the aforementioned reasons, Point One is granted.

Because this Court concludes that the Policy did not provide for UIM coverage as a matter of law, it must follow that Plaintiffs are not entitled to any monetary judgment from GuideOne based on a theory that GuideOne refused to pay the loss without reasonable cause or excuse pursuant to Section 375.420. Therefore, the entire award in favor of Plaintiffs and against GuideOne for statutory penalties, prejudgment interest, and attorneys' fees must be vacated.[7]

---

*See Ritchie v. Allied Property & Cas. Ins. Co.*, 307 S.W.3d 132, 138 (Mo. banc 2009); *see also Chamness v. American Family Mut. Ins. Co.*, 226 S.W.3d 199, 204–05 (Mo.App. E.D. 2007). " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, such as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided within a single policy, such as when an insured has one policy which covers more than one vehicle." *Ritchie*, 307 S.W.3d at 135 (quotation omitted). Whether "stacking" or offsetting was permitted under the Policy was not an issue because GuideOne simply contended that the Policy did not provide UIM benefits. For the reasons explained herein, even when assuming *arguendo* that "stacking" was permitted under the Policy, we conclude that there were no benefits to stack herein because the Policy did not provide UIM benefits.

6. We acknowledge that *Christensen* is not identical to the instant case because in that case "[i]n the 'Coverages' section of the declarations page, under the heading 'UNDERinsured motorist' appeared the notation 'NC,' indicating that UIM was not covered." 307 S.W.3d at 658. But *Christensen* did not hold that every vehicular insurance policy is required to expressly disclaim every type of potential insurance not included in such a policy.

7. It is worth noting that the trial court's strained interpretation of the Policy in order to find coverage highlights the fact that Plaintiffs were certainly not entitled to recover under their vexatious refusal to pay claim. This Court's previous holding in *Shirkey v. Guarantee Trust & Life Ins. Co.* demonstrates that even if we assumed that the trial court was correct that the Policy in question provided coverage herein, Plaintiffs would *still* not be entitled to recover based on its vexatious refusal to pay claim because a litigable issue was presented by GuideOne below:

In order to prevail on a claim for vexatious refusal, "the insured must show that the in-

Because we grant GuideOne's First Point, we need not reach the merits of GuideOne's Second and Third Points because those Points request duplicative relief already granted in Point One.[8] *See Wagner v. Mortgage Information Services, Inc.,* 261 S.W.3d 625, 635 (Mo.App. W.D. 2008) ("Based on our disposition of Point V, we need not resolve the merits of the Wagners' Points II, III, and IV, which seek identical relief.").

## Conclusion

The judgment of the circuit court is hereby reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.

surance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 108 (Mo. App. E.D.2004). **Insurers are not made liable for vexatious refusal merely by insisting upon a judicial determination of open questions of law or fact.** *Id.* at 109. Thus, "[t]he mere fact that a subsequent court decision is adverse to an insurance company's position is not sufficient reason for imposing the penalty." *Shirkey v. Guarantee Trust & Life Ins. Co.,* 258 S.W.3d 885, 888–9 (Mo.App. W.D.2008) (emphasis added).

8. In Point Two, GuideOne argued that the "trial court erred in finding that Plaintiffs are entitled to an award of penalties, interest and attorneys' fees under Section 375.420 RSMo. because there is no evidence that GuideOne denied benefits without reasonable cause or excuse in that there were open question of law regarding the interpretation of the insurance policy and its applicable coverages." Finally, in Point Three, GuideOne argues that the "trial court erred in awarding Plaintiffs pre-judgment interest because such interest cannot be awarded on unliquidated damages in that the amount of Plaintiffs' damages, based on Plaintiff Linda Browning's medical treatment and lost earnings, was not readily ascertainable and, therefore, unliquidated."