

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **SHANE S. TAYLOR,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD79128** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **September 13, 2016** |
| **OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Daniel F. Kellogg, Judge**

**Before Division Two:**  Karen King Mitchell, Presiding Judge, and
Cynthia L. Martin and Gary D. Witt, Judges

Shane Taylor filed a petition for declaratory judgment seeking a declaration that he is entitled to uninsured motorist coverage (UM coverage) from the insurance policy of his mother, Judy Taylor (Mother's Policy, or the Policy), issued by Owners Insurance Company (Owners). Owners appeals the trial court's grant of summary judgment in favor of Taylor, and the denial of its own motion for summary judgment.  Because Mother's Policy did not provide UM coverage to Taylor, we reverse.  Moreover, because both parties concede that identical issues govern the motions for summary judgment filed by both sides and agree as to all facts on which judgment was sought by both parties, no purpose would be served by remand for reconsideration of Owners's

motion for summary judgment.  Therefore, this court reverses the trial court's judgment and enters judgment in favor of Owners.

## Background

The parties submitted the case to the trial court on stipulated facts.  Taylor was riding his Harley Davidson motorcycle on May 2, 2014, when he was struck by a 2000 Ford Focus, operated by Rigoberto Cabrera, an uninsured motorist.  Taylor, whose actions did not contribute to cause the collision, was severely injured and sustained damages in excess of $275,000.

At the time of the collision, Farm Bureau Town and Country Insurance Company of Missouri (Farm Bureau) had issued two policies in the names of Taylor and his wife, Elicia; the first Farm Bureau policy covered the motorcycle, as well as another vehicle owned by the couple, while the second policy covered the couple's third vehicle.  The Farm Bureau policies contained UM coverage for up to $25,000 per vehicle, and Taylor has been paid the full aggregate policy limits of $75,000 for the three vehicles insured by Farm Bureau.

Owners issued Mother a policy listing the two vehicles that she owned.  Mother's Policy provides UM coverage with a limit of $100,000 per vehicle.  Mother is the only person listed in her Policy, though Taylor, who lives with Mother, is a "relative" under Mother's Policy, which defines relative as "a person who resides with you and who is related to you by blood, marriage, or adoption."  The "UNINSURED MOTORIST COVERAGE" endorsement in Mother's Policy includes a "COVERAGE" subsection that extends UM coverage "to a relative who does not own an automobile."  The UM endorsement in Mother's Policy also includes subsections addressing: "EXCLUSIONS" from coverage, "LIMIT[S] OF LIABILITY," and when "OTHER UNINSURED MOTORIST COVERAGE" is primary or excess over coverage provided by the UM endorsement.

2

Taylor filed a UM claim with Owners on Mother's Policy. Owners denied Taylor's claim because he did not fall within the COVERAGE subsection of the UM endorsement, as he owned an automobile at the time of the accident. Taylor filed suit seeking damages and a declaratory judgment that he had the right to UM coverage under Mother's Policy. The parties filed motions for summary judgment on stipulated facts, and the trial court granted Taylor's motion and denied Owners's motion. The trial court found Mother's Policy to be "ambiguous as to the [UM] coverage provided to 'relatives' of [Mother]," and accordingly construed the Policy in favor of coverage. The trial court determined that Taylor was entitled to aggregate coverage in the amount of $200,000 under the Policy, and entered judgment against Owners in that amount.

Owners timely appealed.

## Standard of Review

Summary judgment is proper when the moving party demonstrates there is no genuine dispute about material facts and, under the undisputed facts, the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). An appellate court's review of a motion for summary judgment is *de novo*. *ITT*, 854 S.W.2d at 376. And where, as here, the facts are stipulated, no deference is given to the trial court's findings; the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated. *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010).

## Analysis

In its two points,[1] Owners argues that the trial court committed reversible error in denying its motion for summary judgment and granting Taylor's motion because: (1) the UM endorsement

_____

[1] Taylor argues that Owners's "first point on appeal . . . [and] second point on appeal . . . are contradictory in and of themselves," which, according to Taylor, shows the "ambiguity contained within the Owners UM Policy." We

3

in Mother's Policy unambiguously limits coverage to relatives who do not own an automobile, of which Taylor owns three; and (2) if Taylor is entitled to coverage, his recovery should be limited to $50,000 because Mother's Policy contains an exclusion limiting coverage to $25,000 per vehicle, the statutory minimum, for any person operating an automobile not insured by Mother's Policy. The first point is dispositive, requiring reversal, and, therefore, we do not reach Owners's second point.

### A. Appeal from the denial of summary judgment.

First, we note that, "[g]enerally, the denial of a motion for summary judgment is not a final judgment that may be reviewed on appeal." *McGathey v. Matthew K. Davis Trust*, 457 S.W.3d 867, 876 (Mo. App. W.D. 2015) (quoting *Herring v. Prudential Prop. & Cas. Ins. Co.*, 96 S.W.3d 893, 894 (Mo. App. W.D. 2002)). However, "[w]hen the merits of that motion . . . are inextricably intertwined with the issues in an appealable summary judgment in favor of another party, then that denial may be reviewable." *Lopez v. Am. Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 (Mo. App. W.D. 2002). Here, the motions for summary judgment rely on the application of the same law to stipulated facts in order to answer two discrete questions: whether Taylor has UM coverage under Mother's Policy, and, if so, whether such coverage is subject to an exclusion limiting coverage to $25,000 per vehicle. The motions are inextricably intertwined and we will review both the grant and denial of summary judgment.

---

disagree. It is routine for parties to make arguments in one point, and then to offer an alternative argument in a second point in case the court rejects the first argument. It is not uncommon for the arguments to be at odds with each other. Indeed, the very fact of arguing in the alternative often begins with the assumption that the court has found the first argument, despite the litigant's best efforts, to be incorrect. Arguing in the alternative does not, as Taylor suggests, show that the Policy is ambiguous.

**B. UM Coverage**

The key issue before this court is whether the Owners Policy is ambiguous. When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). Courts will not, however, create ambiguity in an otherwise unambiguous policy. *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015). "The general rules for interpretation of other contracts apply to insurance contracts as well. The key is whether the contract language is ambiguous or unambiguous." *Todd*, 223 S.W.3d at 160 (quoting *Peters v. Emp'rs Mut. Cas. Co.*, 853 S.W.2d 300, 301-02 (Mo. banc 1993)). "[W]here insurance policies are unambiguous, they will be enforced as written." *Id.* (quoting *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991)). "Whether an insurance policy is ambiguous is a question of law." *Id.* (quoting *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999)).

"It is settled law that 'when analyzing an insurance contract, the entire policy and not just isolated provisions or clauses must be considered.'" *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (quoting *Versaw v. Versaw*, 202 S.W.3d 638, 643 (Mo. App. S.D. 2006)). "If an entire policy is analyzed in context and found to be unambiguous, i.e., its language is plain, straightforward, and susceptible to only one meaning, the rules of construction are inapplicable." *Id.* (quoting *Versaw*, 202 S.W.3d at 643). However, if there is duplicity, indistinctness, or uncertainty in the meaning of the policy when it is read as a whole, and "the policy is therefore open to different constructions," an ambiguity exists, and "the policy 'will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy.'" *Id.* (quoting *Versaw*, 202 S.W.3d at 643). "Conflicting clauses in a policy should be reconciled so far as their language reasonably permits; when reconciliation fails, however,

5

inconsistent provisions will be construed in favor of the insured." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 692 (quoting *Lutsky v. Blue Cross Hosp. Servs., Inc. of Mo.*, 695 S.W.2d 870, 875 n.7 (Mo. banc 1985)). Generally, "'if a contract promises something at one point and takes it away at another, there is an ambiguity.'" *Jones*, 287 S.W.3d at 690 (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 133 (Mo. banc 2007)).

Here, the UM endorsement in Mother's Policy contains six subsections. The four relevant subsections[2] include one addressing "COVERAGE" (defining to whom and under what circumstances Owners will pay compensatory damages for bodily injuries caused by an uninsured motorist) and three addressing: "EXCLUSIONS" (limiting the amount of coverage in certain circumstances to the minimum amount required by the Missouri Motor Vehicle Financial Responsibility Law), "OTHER UNINSURED MOTORIST COVERAGE" (addressing when the UM coverage in the endorsement will be primary and when it will be excess as to other applicable UM coverage), and "LIMIT OF LIABILITY" (addressing when the Limit of Liability stated in the Declarations for UM coverage applies). In its motion for summary judgment, Owners argued that the language of the COVERAGE subsection of the UM endorsement unambiguously excludes Taylor from coverage because he owns automobiles. In his response to Owners's motion and in his own motion for summary judgment, Taylor argued that, even if the COVERAGE subsection clearly excludes him, the "LIMIT OF LIABILITY" and "OTHER UNINSURED MOTORIST COVERAGE" subsections reasonably can be read as providing coverage to relatives, without exception.[3] Therefore, Taylor argues these subsections create an ambiguity, and the policy must

---

[2] Two subsections: (1) additional definitions (applicable only to the UM endorsement) and (2) conditions (addressing the timing of claims) are not relevant to the issues presented here.

[3] On appeal, Taylor also argues that the EXCLUSIONS subsection can be reasonably read to provide coverage to him and thus creates an ambiguity.

6

be read to provide coverage. In granting summary judgment to Taylor, the trial court found that the UM endorsement was ambiguous. The basis for this finding is not clear.

### i.    COVERAGE

The COVERAGE subsection provides:

a. [Owners] will pay compensatory damages . . . that any person is legally entitled to recover from the owner or operator of an uninsured automobile for bodily injury sustained . . . while occupying an automobile that is covered by . . . the policy.
b. If the first named insured in the Declarations is an individual, this coverage is extended as follows:
. . .
(2) The coverage . . . is also afforded to a relative who does not own an automobile.

A "relative" is defined in the general "definitions" section (SECTION I) of Mother's Policy as "a person who resides with you and who is related to you by blood, marriage, or adoption." This definition applies throughout the Policy. It is clear that Taylor, who is Mother's son, and who the parties stipulated lives with Mother, qualifies as a relative under the Policy. The coverage subsection of the UM endorsement provides UM coverage (with some limitations not relevant here) to the named insured shown in the Declarations (including the named insured's spouse who resides in the same household, per the Policy's definitions), and "to a relative who does not own an automobile." Taylor owns no fewer than three automobiles, each of which is insured by policies in Taylor's name.

"Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd*, 223 S.W.3d at 163. Policy language that extends coverage only to relatives that do not own an automobile has been upheld as clear and unambiguous, and not contrary to public policy. Indeed, such "language is in common usage[, and] . . . research has disclosed [no authority] in which the intent and meaning of these provisions were ever in doubt. . .

7

because no ambiguity appears." *Famuliner v. Farmers Ins. Co., Inc.*, 619 S.W.2d 894, 896, 899 (Mo. App. W.D. 1981) (Relative is defined as "a relative of the named insured who is a resident of the same household, provided neither such relative nor his spouse owns an automobile."); *Lair v. Am. Family Mut. Ins. Co.*, 789 S.W.2d 30, 32 (Mo. banc 1990) (The son of the named insured, who owned an automobile, was excluded from coverage under his parents' uninsured motorist coverage where the policies at issue excluded from coverage any relative who "owns a car."). "The obvious instruction of [this] policy condition[] is that vehicle owners, including relatives of the named insured, should look to their own insurance as to events associated with ownership and use of their machine." *Famuliner*, 619 S.W.2d at 897. Relying on the language of the COVERAGE subsection, Owners argues that the UM endorsement does not provide coverage to Taylor.

Taylor attempts to distinguish *Famuliner* and *Lair* by noting that, in those cases, the limitation on coverage based on vehicle ownership appeared in the definition of "relative," while in Mother's Policy the limiting language appears in the COVERAGE subsection. Taylor cites no authority and makes no argument supporting the contention that a policy cannot put conditions on coverage directly in the COVERAGE subsection, and we are aware of no such authority. Arguably, a policy with the limitation on coverage stated directly in the COVERAGE subsection would be easier for a layperson to read, as opposed to requiring the reader to flip back and forth between definitions and the coverage provision. Here, the subsection of the Policy setting forth the scope of the UM insurance makes it clear that coverage applies only "to a relative who does not own an automobile." *See Taylor*, 457 S.W.3d at 345 ("If [the] acts or omissions do not fall

8

within the scope of the policy's general insuring clause, then judgment in favor of the [insurer] was proper and this Court need not reach the" disputed language located elsewhere in the Policy.).[4]

Faced with the unambiguous language of the COVERAGE subsection, Taylor argues that three other subsections of Mother's Policy, containing either exclusions or limitations to coverage, create ambiguity as to whether UM coverage applies to Taylor, and therefore the Policy must be read in favor of coverage: (1) an EXCLUSIONS subsection referred to as the "owned but not insured" exclusion; (2) the LIMIT OF LIABILITY subsection, setting forth the limits that the Policy will pay for each person and occurrence; and (3) the Policy's OTHER UNINSURED MOTORIST COVERAGE section, which provides when the Policy's UM coverage is primary or excess coverage and limits the Policy's coverage to a pro-rata share of the damages in certain instances.

In support of his argument, Taylor relies on what he claims to be, "Black letter Missouri law": "[w]here one provision of an insurance policy appears to grant coverage, while another provision appears to take that coverage away, an ambiguity exists that will be resolved in favor of coverage." (Quoting *Jones*, 287 S.W.3d at 689.) By relying on this proposition, Taylor appears to argue that any exclusion from coverage necessarily creates an irreconcilable conflict within a policy. But the Missouri Supreme Court has clarified the meaning of this general proposition:

> Taken out of context, [this] language . . . may be confusing. Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. The principle . . . is more accurately

---

[4] While we reject the argument that a condition or limitation on coverage provided to relatives must be included in the definition of "relative," Taylor's argument that the general definition of "relative," which does not include the limitation on coverage, is relevant to his claim that the LIMIT OF LIABILITY subsection creates an ambiguity, in that unlike the COVERAGE subsection, the LIMIT OF LIABILITY subsection uses the term "relative" without additional limitation or condition. The import of not including the limitation in the definition of relative in the LIMIT OF LIABILITY subsection will be addressed *infra*.

9

stated as follows: *"Though it is the duty of the court to reconcile conflicting clauses in a policy so far as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the insured."*

*Todd*, 223 S.W.3d at 162-63 (emphasis added) (quoting *Bellamy v. Pacific Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983)).  Relying on this language, courts have held that exclusions and limits-of-liability provisions may be used to narrow otherwise broad coverage provisions without creating ambiguity.  *See Naeger v. Farmers Ins. Co., Inc.*, 436 S.W.3d 654, 660 (Mo. App. E.D. 2014) ("[T]he mere existence of limitations and exclusions to broad coverage provisions does not, in and of itself, create ambiguity in the contract.").  Here, Taylor argues, and the trial court apparently held, the converse—that provisions addressing exclusions and limits of liability would be read by a layperson to create coverage otherwise expressly denied and that they create an ambiguity that must be read in favor of the insured.

### ii.    EXCLUSIONS

Taylor first points to the "EXCLUSIONS" subsection of the UM endorsement which provides in relevant part:

> Uninsured Motorist Coverage does not apply:
> . . .
> b. to any person injured while occupying . . . an automobile which is owned . . . by . . . such person injured if such automobile:
> . . .
>     (3) is not insured for Uninsured Motorist Coverage by the policy.
>
> This exclusion applies only to the extent that the Limit of Liability for Uninsured Motorist Coverage shown in the Declarations exceeds the minimum amounts required by the Motor Vehicle Financial Responsibility Law of Missouri.

This "owned but not insured" exclusion limits liability for a person driving his own vehicle, which is not insured by the Policy, to the amount required by Missouri's financial responsibility law.  Neither Taylor nor the trial court precisely states which language within the "owned but not insured" exclusion grants coverage, but it should be noted that the EXCLUSIONS subsection of

10

the Policy specifically begins, "[UM] Coverage does not apply," and then sets forth a number of exclusions to the coverage otherwise provided by the Policy. "An exclusion provision in an insurance policy, by definition, excludes risk" that would otherwise be covered. *Browning v. GuideOne Specialty Mut. Ins. Co.*, 341 S.W.3d 897, 902 (Mo. App. W.D. 2011) (quoting *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 795 (Mo. App. W.D. 2006)). "It has no function to endow coverage but rather limits the obligation of indemnity." *Id.* (quoting *Shelter*, 203 S.W.3d at 795). In *Browning*, the insured sought underinsured motorist (UIM) coverage. The policy did not include a UIM endorsement, but, in an exclusion in the UM endorsement, the policy stated that "[w]e do not provide Uninsured/Underinsured Motorist Coverage for punitive or exemplary damages." 341 S.W.3d at 902. In rejecting the argument that the reference to UIM coverage in the exclusion created an ambiguity, this court "conclude[d] that a reasonable layperson would not read this *exclusionary* language as somehow conferring" coverage. *Id.* Similarly, here, the EXCLUSIONS provision, which, under certain circumstances, limits the amount that will be paid for a covered claim to the minimum amount required by Missouri's financial responsibility law, would not lead a reasonable layperson to believe that coverage was extended to persons otherwise expressly excluded from coverage.

### iii. LIMIT OF LIABILITY

Taylor next points to the "LIMIT OF LIABILITY" subsection, which contains language indicating that:

> We will pay compensatory damages . . . up to the Limit of Liability stated in the Declarations for Uninsured Motorist Coverage as follows:
> . . .
> c.      If you are an individual and the policy insures more than one of your automobiles for [UM] Coverage, our Limit of Liability for only you or your *relatives* is as follows:
> > (1) the Limit of Liability for each person shall be the sum of the 'each person' limits stated in the Declarations for such automobile.

11

(Emphasis added.)

Taylor argues that this "section is at direct odds with the elimination of UM coverage" in the COVERAGE subsection, because, here, "relatives" (a defined term) is used without limitation.[5] But this simply misses the point that, "If coverage . . . is specifically excluded . . . , the Limits of Liability provisions are not invoked and any alleged inconsistencies are either non-existent or irrelevant." *Naeger*, 436 S.W.3d at 661. In *Naeger*, the plaintiff was a passenger in a vehicle that was struck by an underinsured motor vehicle. Naeger sustained damages in excess of the amount paid in combination by the underinsured driver's policy and the underinsured motorist coverage carried by the driver of the vehicle in which she was a passenger. She sought underinsured motorist coverage from a policy issued to her. In affirming the denial of coverage, the Eastern District of this court found that the policy's Limits of Liability subsection of the UM endorsement, which indicated the insurer would "pay up to the limits of liability . . . as shown in the Declarations [subject to a reduction] by any amount paid . . . to . . . an insured person," was not inconsistent with the policy's Non-Owned Vehicle Exclusion, which expressly provided that "[t]his coverage does not apply to bodily injury sustained . . . if the injured person was occupying a vehicle you do not own which is insured for this [underinsured motorist] coverage under another policy." The court found that the two provisions were easily reconcilable, because "the

---

[5] In support of his argument, Taylor claims that, as the only blood relative living with Mother, he is the only person who could qualify as a relative under the Policy. Apparently arguing that, therefore, the parties specifically agreed that he should be covered under the Policy, Taylor inserts his name where "relative" appears in the Policy, and argues that the LIMIT OF LIABILITY provision plainly contemplates him having coverage. The argument is incorrect for a number of reasons. First, the record contains no evidence of his assertion, which is not among the stipulated facts. Second, the Policy is open-ended, with no limitation on other relatives moving in with Mother, meaning that, even if Taylor was the only person who *did* qualify, he was not the only person who *could* qualify. Most importantly, the declarations page clearly denotes Mother as the Policy's sole insured. "When the declarations page clearly communicates the coverage provided by the insurance contract, and the other policy provisions neither expressly change the coverage nor reflect a different intention than that clearly expressed on the declarations page, the declarations page controls." *Browning v. GuideOne Specialty Mut. Ins. Co.*, 341 S.W.3d 897, 903 (Mo. App. W.D. 2011) (quoting *Christensen v. Farmers Ins. Co., Inc.*, 307 S.W.3d 654, 658 (Mo. App. E.D. 2010)).

Non-Owned Vehicle Exclusion excluded certain risks from coverage completely while the Limits of Liability provisions limit the extent of . . . liability when the risk is covered. Thus, the Limits of Liability provisions used to calculate the extent of . . . liability are only relevant when the occurrence is covered by the Policy." *Id*. at 661.

Here, as in *Naeger*, Taylor is expressly excluded from coverage under the COVERAGE subsection, and, thus, the LIMIT OF LIABILITY subsection is never triggered. Had the COVERAGE subsection been ambiguous about whether Taylor was covered, the language used in the subsection would be relevant to determining coverage. But again, the COVERAGE subsection clearly and unequivocally denies coverage to any "relative who . . . own[s] an automobile," which Taylor does. "In reviewing the language in question, it should be clear to the average layperson that this language only *limits* benefits, as opposed to extending them in this context." *Browning*, 341 S.W.3d at 902.

### iv.    OTHER UNINSURED MOTORIST COVERAGE

Finally, Taylor claims that the Policy's OTHER UNINSURED MOTORIST COVERAGE subsection renders the Policy ambiguous. This subsection applies when multiple policies provide coverage for the same incident and sets forth when Mother's Policy is primary, when it is excess, and when it will provide pro-rata coverage with the other available UM policies. The section does not purport to provide coverage, and it specifically sets forth that it applies only to "[t]he [UM] coverage provided by this" Policy. The scope of that coverage is set forth in the COVERAGE subsection, and the OTHER UNINSURED MOTORIST COVERAGE subsection by its terms only applies to, and does not purport to expand upon, "such coverage." The subsection "is clear and unambiguous that it solely limits coverage in the Policy as it pertains to 'Other Insurance,' and

13

nowhere does this language somehow suggest that" coverage is expanded to parties not otherwise insured by the Policy. *Browning*, 341 S.W.3d at 902.

Because coverage is specifically excluded, the COVERAGE subsection is not inconsistent with the "owned but not insured" exclusion, the LIMIT OF LIABILITY subsection, or the OTHER UNINSURED MOTORIST COVERAGE subsection. That is because, in reading this policy as a whole, the terms of these various subsections can be reconciled.

It is instructive to look at cases where our Supreme Court has held that there is an ambiguity in a policy that is "entirely inconsistent and cannot be reconciled." *Rice*, 301 S.W.3d at 48. The UM policy at issue in *Rice* contained a section that limited coverage to the amount mandated by the uninsured motorist law if the insured also received workers' compensation benefits as a result of the accident. *Id*. at 47-48. That provision was immediately "followed by provisions that provide 'the [uninsured motorist part] of the policy which exceed[s] the requirements of any applicable uninsured motorist insurance law or financial responsibility law, or are not governed by it, are fully enforceable.'" *Id*. at 48. Thus, the policy, in successive paragraphs in a subsection purporting to define the parameters of coverage, "expressly limit[ed] coverage to the statutory minimum and yet purport[ed] to grant full coverage to all provisions that exceed the statutory minimums." *Id*. These "inconsistent and irreconcilable provisions," the Court concluded, "create an ambiguity that will be resolved in favor of the insured." *Id*. at 49.

Similarly, in *Jones*, the Court examined a UIM policy with apparently inconsistent provisions to determine if an ambiguity existed. 287 S.W.3d at 690. The policy contained several provisions granting coverage up to $100,000, as well as a single provision purporting to limit liability by the amount collected from the underinsured motorist. *Id.* The insurer claimed that the limit of liability provision allowed it to subtract money paid or payable to the insured by the

14

tortfeasor from the $100,000 limit. *Id.* at 691. The Court noted that the insurer's interpretation of the limit of liability provision would render the other provisions, guaranteeing $100,000 of coverage, "inaccurate and misleading," because the other party's insurance would necessarily—as it was *under*insured motorist insurance—always reduce coverage. *Id.* at 692. The Court refused "to insert additional words into" the sections granting $100,000 in coverage, and instead held that the limitation provision allowed the insurer to subtract the amount of money paid or payable by the tortfeasor from the total damages, not $100,000, thereby reconciling the provision with the rest of the policy. *Id.* at 692-93.

Finally, in *Seeck*, 212 S.W.3d at 132-33, the insured sought coverage under an "excess" or "other" insurance clause that stated, "When an insured is occupying a motor vehicle not owned by the insured . . . this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary." The insurer argued that Seeck's recovery was limited by the definition of an underinsured motorist and the limits of liability provision that reduced the limit of liability amount payable to the insured by those amounts paid or payable by the party at fault for the accident. *Id.* at 132-33, 132 n.2. In other words, if the underinsured motorist's coverage was equal to or greater than the amount of the limit on liability, no coverage was available. The Court determined that "[w]here, as here, another insurance clause appears to provide [excess] coverage but other clauses indicate that such coverage is not provided, then the policy is ambiguous, and the ambiguity will be resolved in favor of coverage for the insured." *Id.* at 134. In each of these cases, the clauses at issue were inconsistent and that inconsistency could not be reconciled.

Here, unlike the internally inconsistent provisions that have been found to be irreconcilable by Missouri courts, the provisions here are easily reconcilable. "Reading the contract as a whole,

15

the [COVERAGE subsection] exclude[s] certain risks from coverage completely while the [other] provisions limit the extent of [Owners's] liability when the risk is covered." *Naeger*, 436 S.W.3d at 661. The "provisions used to calculate the extent of [Owners's] liability are only relevant when the occurrence is covered by the Policy." *Id*. Because Taylor was not covered by the Policy, the remaining provisions limiting liability are irrelevant.

Owners's first point is granted. Because the two summary judgment motions are based on the same facts and law, no purpose would be served by remand. *City of DeSoto v. Nixon*, 476 S.W.3d 282, 291 (Mo. banc 2016). The trial court erred in failing to grant summary judgment to Owners. Under Rule 84.14, this court may enter the judgment the trial court should have entered.

## Conclusion

Because Mother's Policy did not provide Taylor with UM coverage, the judgment of the trial court is reversed, and this Court enters judgment in favor of Owners.

Karen King Mitchell, Presiding Judge

Cynthia L. Martin and Gary D. Witt, Judges, concur.

16