Paul LERO & Carolyn Lero,
Respondents,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Appellant.

No. WD 73220.

Missouri Court of Appeals,
Western District.

Oct. 25, 2011.

James Sanders and Allison G. Confer, Kansas City, MO, for appellant.

Stephen R. Bough, Kansas City, MO and Kelly A. McCambridge–Parker, Lee's Summit, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge and ANN MESLE, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

State Farm Fire and Casualty Company ("State Farm") appeals the circuit court's grant of summary judgment in favor of Paul Lero and Carolyn Lero ("the Leros") and denial of State Farm's motion for summary judgment. The court determined a personal liability umbrella policy purchased by the Leros' deceased daughter provided uninsured motorist coverage and ordered State Farm to pay the policy's $1 million limit to the Leros. For reasons explained herein, we reverse the circuit court's summary judgment in favor of the Leros and enter summary judgment in favor of State Farm.

## Factual and Procedural History

In October 2008, the Leros' daughter, Denise Greene, died from injuries she sustained in an automobile collision. The other car involved in the collision was driven by Adam Mace and owned by Robert Lyons. The collision occurred when Mace, traveling on 291 Highway in Cass County at a high rate of speed and under the influence of alcohol, crossed into the opposite lane of traffic and struck Greene's car.

The Leros sued Lyons for the wrongful death of their daughter, alleging he had negligently entrusted Mace with his car. The circuit court entered a judgment against Lyons for $2 million. Lyons's insurer, American Family Insurance Group, denied coverage. On May 14, 2009, the Leros made demand upon Greene's insurer, State Farm, for uninsured motorist benefits under Greene's automobile liability policy and her personal liability umbrella policy.[1] State Farm Mutual Automobile Insurance Company paid the Leros the automobile liability policy's uninsured motorist coverage limit of $50,000. On May 29, 2009, State Farm's counsel sent a letter to the Leros denying any uninsured motorist coverage under the umbrella policy, stating:

> In partial response to your letter of May 14, 2009, State Farm has advised that under the provisions of the personal liability umbrella policy issued to Denise N. Greene, Policy # 25–BB–N742–4, Ms. Greene did not have any uninsured motorist coverage. I enclose a copy of the Declarations page of her policy which confirms that there was no uninsured motor vehicle coverage purchased.

On February 10, 2010, the Leros filed a breach of contract claim against State Farm. In their claim, the Leros asserted State Farm required Greene to carry uninsured motorist coverage in her underlying automobile liability policy as a prerequisite to maintaining her umbrella policy. The Leros further allege that because the umbrella policy was meant to provide excess coverage over Greene's automobile liability policy, the policy was also required to provide uninsured motorist coverage. The Leros contended State Farm breached the umbrella policy by refusing to pay them the policy's $1 million limit to them.

State Farm filed a motion for summary judgment asserting the umbrella policy did not provide uninsured motorist coverage. State Farm explained that the insurance

---

1. Greene's automobile liability policy was issued by State Farm Mutual Automobile Insurance Company, and her personal liability umbrella policy was issued by State Farm Fire and Casualty Company. The references in this opinion to "State Farm" are to State Farm Fire and Casualty Company, as State Farm Mutual Automobile Insurance Company is not a party to this action.

provided by the umbrella policy was based upon Greene's payment of premiums for the types of coverages she chose. The only type of coverage shown in the "Coverage(s)" section on the umbrella policy's declarations page was "Coverage L—Personal Liability." Uninsured motorist coverage was not shown.

State Farm acknowledged the umbrella policy required Greene to maintain the underlying insurance policies listed on the umbrella policy's declarations page, and one type of policy Greene was required to maintain was automobile liability. State Farm denied, however, that the umbrella policy required her to maintain uninsured motorist coverage on the underlying automobile policy. State Farm explained the umbrella policy's definition of "automobile liability" policy provided only that, if uninsured motorist coverage is shown on the umbrella policy's declarations page, then the required underlying automobile liability policy must include uninsured motorist coverage. State Farm further explained that the definition did not provide that, if the required underlying automobile liability policy includes uninsured motorist coverage, then the umbrella policy also includes uninsured motorist coverage. Because the umbrella policy's declarations page did not show uninsured motorist coverage, State Farm contended the policy did not provide such coverage.

The Leros filed a cross-motion for summary judgment asserting the umbrella policy provided uninsured motorist coverage. The Leros alleged that uninsured motorist coverage fit within the umbrella policy's definition of "Coverage L—Personal Liability," which said, in pertinent part:

If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, we will pay on behalf of the **insured,** the damages that exceed the **retained limit.**[2]

The Leros argued their claim for uninsured motor vehicle benefits fit within Coverage L—Personal Liability because Greene met the policy's definition of an "insured," which was "you and your relatives whose primary residence is your household,"[3] and Greene suffered a "loss," which the policy defined as "an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period." The Leros contended the umbrella policy provided coverage over Greene's automobile liability policy and Missouri law required Greene to carry uninsured motorist coverage in her automobile liability policy. Because the $2 million judgment against Lyons exceeded the $50,000 limit of uninsured motorist coverage in her automobile liability policy, the Leros argued Coverage L—Personal Liability included uninsured motorist coverage absent an express exclusion. The Leros claimed there was no express exclusion. Additionally, the Leros argued they were entitled to judgment as a matter of law because the umbrella policy was, at best, ambiguous as to whether it provided uninsured motorist coverage.

In its suggestions in opposition to the Leros' motion for summary judgment, State Farm responded that, contrary to the Leros' contention, their claim for uninsured motorist benefits did not fit within the umbrella policy's definition of Coverage L—Personal Liability because it was

---

2. The emphasis was in the original and indicated that the term was defined in the policy.

3. The Leros did not reside in Greene's household and did not assert they were insureds under the policy.

not a claim "against an insured" but, rather, was a claim brought on behalf of an insured. Because the policy's declarations page listed only Coverage L—Personal Liability and not uninsured motorist coverage in the "Coverage(s)" section, State Farm contended that the umbrella policy did not include uninsured motorist coverage.

In response to the Leros' contention that the umbrella policy did not exclude uninsured motorist coverage, State Farm argued that the Leros were inappropriately attempting to shift the burden of proof because they failed to meet their initial burden of showing coverage. State Farm further argued that the policy did, in fact, expressly exclude uninsured motorist coverage, as Exclusion 13 stated there was no coverage under the policy for "**bodily injury** or **personal injury** to any insured." State Farm acknowledged it had not raised this exclusion earlier and stated it was raising it solely in response to the Leros' contention, in their summary judgment motion, that the policy did not exclude uninsured motorist coverage.

The Leros filed a motion to strike State Farm's additional defenses. Specifically, the Leros asked the court to find that State Farm was estopped from asserting that:

a. Uninsured motorist coverage is not included in the Umbrella Policy's definition of coverage;

b. The only coverage listed on the declarations page of the Umbrella Policy is Coverage–L;

c. [The Leros] inappropriately attempt to shift the burden of proof by arguing uninsured motorist coverage was not excluded; and

d. The Umbrella Policy expressly excluded uninsured motorist coverage.

The Leros argued these defenses constituted new bases upon which State Farm was denying coverage and were inconsistent with the defense State Farm asserted in its denial letter.

Following a hearing on the motions, the circuit court struck State Farm's defenses. Regarding the parties' summary judgment motions, the court stated both motions dealt with the same issue: whether Greene's umbrella policy provided uninsured motorist coverage. The court ruled in favor of the Leros on this issue, granting their summary judgment motion and denying State Farm's summary judgment motion. The court ordered State Farm to pay the umbrella policy's $1 million limit to the Leros. State Farm appeals.

State Farm raises five points on appeal. In Point I, State Farm claims the circuit court erred in granting the Leros' summary judgment motion and denying its summary judgment motion because the umbrella policy does not provide uninsured motorist coverage. In Points II through V, State Farm alleges error in the circuit court's striking its defense that the umbrella policy's definition of Coverage L—Personal Liability does not include uninsured motorist coverage. Because the availability of this defense is integral to our determination of the ultimate issue of whether the umbrella policy provides uninsured motorist coverage, we will first address the propriety of the court's striking the defense.

**Striking State Farm's Defense**

State Farm raises four allegations of error concerning the court's striking its defense that the umbrella policy's definition of Coverage L—Personal Liability does not include uninsured motorist coverage. In Point II, State Farm contends striking its defense improperly lessened the Leros' burden to demonstrate coverage. In Point III, State Farm alleges

striking its defense was erroneous because estoppel was not warranted. In Point IV, State Farm argues striking its defense erroneously created coverage through estoppel. Finally, in Point V, State Farm claims the court's rulings granting the Leros' motion to strike and the Leros' motion for summary judgment were inconsistent. Points III and IV, which concern the invocation of estoppel as the basis for striking State Farm's defense, are dispositive and, therefore, are the only points we need address.

We review the circuit court's ruling on a motion to strike for an abuse of discretion. *Wareham v. Am. Family Life Ins. Co.*, 922 S.W.2d 97, 100 (Mo.App.1996). We will reverse the court's ruling only when it " 'is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.' " *Id.* (citation omitted).

■ The basis for the Leros' motion to strike was that State Farm was estopped from asserting its defense that the umbrella policy's definition of Coverage L—Personal Liability does not include uninsured motorist coverage. To estop State Farm from asserting a policy defense, the Leros had the burden of showing: (1) State Farm initially asserted a specific policy defense and later sought to rely instead upon an inconsistent defense; (2) State Farm's actions induced the Leros to rely on the original defense to their detriment and subsequent injury; and (3) the Leros suffered prejudice as a result of such reliance. *Versaw v. Versaw*, 202 S.W.3d 638, 650 (Mo.App.2006).

■ "Estoppel will not be lightly invoked; it should be applied with care and caution and only when all elements constituting estoppel clearly appear." *Whitney v. Aetna Cas. & Sur. Co.*, 16 S.W.3d 729, 733 (Mo.App.2000). "[A]bsent a statement

which excludes other defenses and upon which the [party asserting coverage] reasonably relies in preparing to preserve its claim, estoppel is not applicable." *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 389 (Mo. banc 1989). Indeed, "where the insurer's initial denial is stated in such a way that it reasonably implies the subsequently, but more specifically stated, consistent reason for denial," the party asserting coverage cannot claim to have changed its position or relied to its detriment on the insurer's initial denial. *Id.*

■ In this case, the Leros failed to establish any inconsistency between State Farm's initial denial and its defense that the umbrella policy's definition of Coverage L—Personal Liability does not include uninsured motorist coverage. State Farm's denial letter advised that *"under the provisions of the personal liability umbrella policy* issued to Denise N. Greene, Policy # 25–BB–N742–4, *Ms. Greene did not have any uninsured motorist coverage."* (Emphasis added.) This statement indicates State Farm denied coverage because the umbrella policy's provisions, which would include the definition of Coverage L—Personal Liability, do not provide uninsured motorist coverage.

State Farm also stated in the denial letter that it was enclosing "a copy of the Declarations page of [Greene's] policy which confirms that there was no uninsured motor vehicle coverage purchased." The Leros argue this reference to the absence of uninsured motorist coverage on the declarations page meant State Farm denied coverage solely because uninsured motorist benefits are not listed on the declarations page of the policy. The Leros' argument takes the reference to the declarations page out of context. State Farm specifically said the declarations

page "*confirms* that there was no uninsured motor vehicle coverage purchased." (Emphasis added.) Because the declarations page shows only Coverage L—Personal Liability in the "Coverage(s)" section and does not show uninsured motorist coverage, the declarations page confirms the umbrella policy's coverage is limited to that defined in Coverage L—Personal Liability. The definition of Coverage L—Personal Liability is a policy provision which, under a reasonable interpretation of State Farm's previous statement in the denial letter, does not provide uninsured motorist coverage.

State Farm consistently maintained this position throughout its subsequent pleadings. In its answer, amended answer, and response to the Leros' request for admissions, State Farm denied the umbrella policy "included" any uninsured motorist coverage and referenced its denial letter. In its motion for summary judgment, State Farm asserted the umbrella policy does not "include" uninsured motorist coverage because the declarations page does not list uninsured motorist coverage but lists only Coverage L—Personal Liability in the "Coverage(s)" section.

The Leros place much emphasis on the fact that, in its suggestions in support of its summary judgment motion, State Farm did not specifically discuss *why* Coverage L—Personal Liability does not include uninsured motorist coverage but instead discussed the significance of the absence of uninsured motorist coverage from the declarations page. The reason for State Farm's focusing on this issue is clear from the record. In their amended petition, the Leros did not assert coverage under Coverage L—Personal Liability but instead appeared to assert coverage solely on the basis that, because Greene carried uninsured motorist coverage in her automobile liability policy and the umbrella policy re-quired Greene to maintain underlying automobile liability insurance, the umbrella policy also included uninsured motorist coverage.

To refute the Leros' assertion of coverage based upon the policy's required underlying insurance provision, State Farm explained in its suggestions in support of its summary judgment motion that, if the umbrella policy included uninsured motorist coverage, the declarations page would show such coverage. State Farm further explained that the mere fact that the required underlying automobile liability policy includes uninsured motorist coverage does not mean the umbrella policy also includes such coverage. Hence, State Farm's argument regarding the absence of uninsured motorist coverage from the declarations page was in response to the Leros' assertion of coverage based solely upon the required underlying insurance provision.

After the Leros changed their coverage claim to assert that uninsured motorist coverage fits within the definition of Coverage L—Personal Liability and is not expressly excluded by the policy, State Farm stated specifically, in its suggestions in opposition to the Leros' summary judgment motion, why Coverage L—Personal Liability does not include uninsured motorist coverage. State Farm said Coverage L—Personal Liability does not include uninsured motorist coverage but instead covers an insured's tort liability to third persons. State Farm noted the plain language of the definition of Coverage L—Personal Liability provides coverage for claims and suits brought "against an insured" and not claims, such as the Leros', brought *on behalf of* an insured for the insured's injuries.

This explanation as to why the definition of Coverage L—Personal Liability does not include uninsured motorist coverage

does not constitute a change in State Farm's position but is a subsequent and more specifically stated consistent reason for its initial denial. See *Brown*, 776 S.W.2d at 389. Cf. *Burns Nat. Lock Installation Co. v. Am. Family Mut. Ins. Co.*, 61 S.W.3d 262, 267–69 (Mo.App.2001) (where insurance company's initial denial and pleadings asserted denial based upon two specific policy exclusions, insurance company was estopped from later asserting denial based upon coverage provision).

Throughout its denial letter and pleadings, State Farm consistently maintained that the umbrella policy's provisions do not include uninsured motorist coverage and that Coverage L—Personal Liability is the only type of coverage shown on the declarations page. The clear implication of this position is that uninsured motorist coverage does not fit within the definition of Coverage L—Personal Liability—the umbrella policy's sole provision defining the policy's coverage. Any belief the Leros held that State Farm denied their claim because uninsured motorist coverage is not listed on the declarations page, *regardless of the definition of Coverage L—Personal Liability,* was not reasonable.

Because State Farm's defense that the umbrella policy's definition of Coverage L—Personal Liability does not include uninsured motorist coverage is not inconsistent with and may be implied from State Farm's denial letter and pleadings, the Leros could not have reasonably relied to their detriment on State Farm's initial denial. The Leros, therefore, were not entitled to invoke estoppel to prevent State Farm from asserting this defense. See *Brown*, 776 S.W.2d at 389.

■ Moreover, estopping State Farm from asserting this defense violated the rule that estoppel "may not be employed to create coverage where it otherwise did not exist." *Shelter Gen. Ins. Co. v. Sie-* *gler*, 945 S.W.2d 24, 27 (Mo.App.1997). "This rule is grounded in the idea that 'estoppel and waiver do not themselves give a cause of action, and that the purpose of estoppel is to preserve rights previously acquired but not to create new ones.'" *Id.* (citations omitted). The only provision defining the umbrella policy's coverage is Coverage L—Personal Liability. Estopping State Farm from asserting that the definition of Coverage L—Personal Liability does not include uninsured motorist coverage creates coverage for the Leros' claim where it otherwise may not exist. See *id.*

The circuit court abused its discretion in granting the Leros' motion to strike State Farm's defense that the umbrella policy's definition of Coverage L—Personal Liability does not include uninsured motorist coverage. Points III and IV are granted.

## Summary Judgment on Coverage Issue

We now turn to State Farm's claim in Point I that the circuit court erred in granting the Leros' summary judgment motion and denying its summary judgment motion because the umbrella policy does not provide uninsured motorist coverage.

Appellate review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the grant of summary judgment where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.*

■■ Generally, the court's denial of a summary judgment motion is not a final judgment that is reviewable on appeal. *Lopez v. Am. Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 (Mo.App.2002). "When the merits of that motion, however, are inextricably intertwined with the issues in an appealable summary judgment in favor

of another party, then that denial may be reviewable." *Id.* In this case, the sole issue raised in both parties' motions for summary judgment is whether the umbrella policy provides uninsured motorist coverage. Because the denial of one summary judgment motion leads directly to the conclusion that the other should be granted, we may reach the merits of the denial of State Farm's summary judgment motion. *Lopez,* 96 S.W.3d at 892.

■■■■ The interpretation of an insurance policy is an issue of law that we review *de novo.* *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010). In interpreting an insurance policy, we read the policy as a whole to determine the parties' intent. *Thiemann v. Columbia Pub. Sch. Dist.,* 338 S.W.3d 835, 839–40 (Mo.App. 2011). "An insurance contract includes the declarations, the form policy, and any endorsements and definitions." *Christensen v. Farmers Ins. Co.,* 307 S.W.3d 654, 658 (Mo.App.2010). We give the policy language its plain and ordinary meaning. *Thiemann,* 338 S.W.3d at 840. "If, giving the language used its plain and ordinary meaning, the intent of the parties is clear and unambiguous, we cannot resort to rules of construction to interpret the contract." *Id.* (citation omitted). "Disagreement over the interpretation of the terms of a contract does not create an ambiguity." *Id.*

■■■■ The insurance policy in this case is a personal liability umbrella policy. While a primary insurance policy provides "the first layer of insurance coverage," an umbrella policy is used to provide "specific

coverage above an underlying limit of primary insurance." 3 Leo Martinez, et al., NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE § 29A.02[1] (2012 ed.). The purpose for writing an umbrella policy in addition to a primary policy is "to protect the insured against liability for catastrophic losses that would exceed the limits of affordable primary coverage." *Id.* at § 29A.02[3].

The plain language of Greene's umbrella policy indicates this was precisely the purpose for writing the policy—to protect her against personal liability for catastrophic losses suffered by third parties that would exceed the limits of her underlying automobile liability policy. The umbrella policy's declarations page, which states the policy's essential terms in an abbreviated form, *Christensen,* 307 S.W.3d at 656 n. 1, shows that the only type of coverage provided by the policy is Coverage L—Personal Liability.[4]

The policy's definition of Coverage L—Personal Liability says, in pertinent part:

> If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, we will pay on behalf of the **insured,** the damages that exceed the **retained limit.**

The term "insured" refers, in relevant part, to:

a. **you** . . . ;

. . . .

c. any other person or organization to the extent they are liable for the use

---

4. The Leros argue the declarations page is ambiguous because it does not mention uninsured motorist benefits. The Leros cite no law for the proposition that State Farm was required to expressly state the types of coverage not included in the policy. Indeed, this court has suggested otherwise. See *Browning v. GuideOne Specialty Mut. Ins. Co.,* 341 S.W.3d 897, 903 n. 6 (Mo.App. W.D.2011) (noting that *Christensen,* 307 S.W.3d at 658, which found a declarations page that expressly disclaimed underinsured motorist coverage to be controlling, "did not hold that every vehicular insurance policy is required to expressly disclaim every type of potential insurance not included in such a policy").

of an **automobile, recreational motor vehicle** or watercraft by a person included in [a.]

The term "you" refers to the named insured on the declarations page.

Greene is the named insured on the umbrella policy's declarations page; hence, she was an insured. Coverage L—Personal Liability says that it covers claims made or suits brought "against" an insured. Thus, to be covered under Coverage L—Personal Liability, the claim must be against Greene. The plain and ordinary meaning of the word "against" is "in opposition or hostility to" or "contrary to." Webster's Third New International Dictionary of the English Language Unabridged 39 (1993); The American Heritage Dictionary of the English Language 31(4th ed.2006).

The Leros' claim for uninsured motorist benefits is not a claim made in opposition to or contrary to Greene. Rather, it is a claim made *on behalf of* Greene for her wrongful death. Pursuant to the definition of Coverage L—Personal Liability, the policy covers only claims made by third parties against an insured and does not cover claims for uninsured motorist benefits asserted by or on behalf of an insured. Further, the Leros's current claim does not involve "a loss for which [Greene] is legally liable." That the umbrella policy does not cover claims asserted by or on behalf of an insured is further confirmed by the policy's exclusions, which expressly exclude claims for bodily injury to an insured, personal injury to an insured, and damage to property owned by an insured.

To avoid this result, the Leros contend that State Farm is also an insured under the policy. They argue State Farm qualifies as an insured under subsection c. of the definition of "insured" because State Farm is an organization whose liability arose from Greene's use of an automobile.

The Leros contend that, because their claim for uninsured motorist benefits is *against* State Farm, their claim is covered under the definition of Coverage L—Personal Liability.

■■■■ The Leros cite no support for this interpretation of the policy, which would result in State Farm's being both the insurer and the insured under the same policy. Moreover, any liability State Farm has in this matter must necessarily arise out of the umbrella policy. There is no occasion for which State Farm could be legally liable for damages for Greene's use of an automobile outside of the umbrella policy. Thus, if State Farm were an insured, then the statement in Coverage L—Personal Liability that the policy covers damages because of a loss "for which the insured is legally liable and to which this policy applies" would be redundant. "In interpreting an insurance contract, we must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo.App. 2008). State Farm was not an insured under Greene's umbrella policy.

The Leros also seek to avoid the plain language of the definition of Coverage L—Personal Liability by asserting the policy is ambiguous. The Leros' ambiguity argument is premised on the fact that Section 379.203, RSMo 2000, requires automobile liability policies to provide uninsured motorist coverage. Essentially, the Leros contend that, because the umbrella policy required Greene to maintain an underlying automobile liability policy and Missouri law required Greene's automobile liability policy to include uninsured motorist coverage, the umbrella policy is ambiguous as to whether it includes uninsured motorist coverage.

We find no ambiguity. The umbrella policy's reference to uninsured motorist

coverage says only that an underlying automobile liability policy must include uninsured motorist coverage if such coverage "is shown on the declarations page of this policy." In other words, if the umbrella policy's declarations page shows that the umbrella policy provides uninsured motorist coverage, then the underlying automobile liability policy must also include uninsured motorist coverage. There is nothing in this statement, or in any other provision of the policy, indicating that, when state law requires the automobile liability policy to provide uninsured motorist coverage, the umbrella policy automatically includes uninsured motorist coverage. See *West v. Transamerica Ins. Co.*, 614 S.W.2d 752, 754 (Mo.App.1981) (stating that umbrella policy, which specified the extent of its coverage and made no reference to uninsured motorist coverage, covered only insured's tort liability to third persons).

Reading the umbrella policy as a whole, the plain and ordinary meaning of the language used indicates the policy was intended to protect Greene from personal liability for catastrophic losses suffered by third parties that would exceed the limits of her underlying automobile liability policy. The umbrella policy clearly and unambiguously does not provide uninsured motorist coverage. The circuit court erred in ruling otherwise. Pursuant to Rule 84.14, we reverse the grant of summary judgment in favor of the Leros and enter summary judgment in favor of State Farm.

### Conclusion

The judgment of the circuit court is reversed, and summary judgment is hereby entered in favor of State Farm Fire and Casualty Company.

All Concur.