# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1878
_____

Allstate Indemnity Company

*Plaintiff - Appellee*

v.

Levina Rice

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 13, 2014
Filed: June 17, 2014
_____

Before RILEY, Chief Judge, LOKEN and BYE, Circuit Judges.
_____

RILEY, Chief Judge.

On October 10, 2010, Levina Rice suffered significant injuries as a passenger in a one-vehicle automobile accident in Bates County, Missouri. Rice's son-in-law, Howard Wiebe, drove the vehicle, which was owned by Rice's daughter and son-in-law, Sherry and Timothy Underwood. Both Wiebe and the Underwoods were covered by auto liability policies in effect at the time of the accident. The insurers

for each of those policies paid Rice their respective policy limits, a total of $350,000. The Underwoods also had purchased a personal umbrella insurance policy issued by Allstate Indemnity Company (Allstate Indemnity). Pursuant to a settlement agreement among Allstate Indemnity, Rice, Wiebe, and the two primary auto liability insurers, Allstate Indemnity sought a declaratory judgment in the district court delineating its duties under the umbrella policy, if any, to Wiebe. Allstate Indemnity and Rice both moved for summary judgment. The district court[1] granted Allstate Indemnity's motion and denied Rice's motion, concluding Wiebe was not an "insured person" under the umbrella policy. Rice appealed. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.   BACKGROUND

### A.   Facts

The following facts are undisputed. At the time of Rice's accident, the Underwoods were the named insureds of an auto policy (auto policy) issued by Allstate Fire and Casualty Insurance Company (Allstate Fire and Casualty), a distinct entity from Allstate Indemnity. The auto policy's bodily injury coverage was limited to $250,000 per person. Wiebe was the named insured of a Farmers Insurance Company (Farmers) auto liability policy with coverage limited to $100,000 per person. Pursuant to these policies, Allstate Fire and Casualty paid Rice $250,000, and Farmers paid Rice $100,000.

At the time of the accident, the Underwoods also were the named insureds of a "Personal Umbrella Policy" (umbrella policy) issued by Allstate Indemnity. The umbrella policy required underlying auto bodily injury insurance coverage of $250,000 per person and limited excess liability to $1,000,000 for each occurrence. The umbrella policy "provides only excess insurance. It does not contribute with any

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

-2-

Required Underlying Insurance or other insurance which applies to an **occurrence**." Under the umbrella policy, Allstate Indemnity

will pay only that amount of damages which exceeds the sum of:

1. the limits of liability of any Required Underlying Insurance which apply to the **occurrence**; plus

2. the limits of any other liability insurance available to an **insured person** which apply to the **occurrence.**

### B. Procedural History

Allstate Indemnity, Rice, Wiebe, Allstate Fire and Casualty, and Farmers entered into a "Contract to Limit Recovery Pursuant to [Mo. Rev. Stat.] § 537.065[] and Settlement Agreement Pursuant to [Mo. Rev. Stat.] § 537.060" (settlement agreement) in which (1) Allstate Fire and Casualty promised to pay Rice $250,000 under the Underwoods' auto policy; (2) Farmers promised to pay Rice $100,000 under Wiebe's auto policy; (3) Allstate Indemnity agreed to file a declaratory judgment action challenging any coverage for Wiebe under the umbrella policy; (4) if Allstate Indemnity prevailed in the declaratory judgment action after "final review," Rice agreed to release and refrain from suing Wiebe, the Underwoods, and their insurers for any further damages arising out of the accident; and (5) if Rice prevailed in the declaratory judgment action, she agreed that "any verdict" against Wiebe "will be reduced by the amount of $350,000.00" and "any amount collected on any judgment of Levina Rice against Howard Wiebe shall only be paid from the Allstate umbrella policy." Although Rice made promises not to sue the Underwoods and "full[y] release[d]" them, the Underwoods were not parties to the settlement agreement. Rice "state[d] and agree[d] that there is no allegation or evidence of negligence or fault on the part of [the Underwoods], regarding any injuries or damages alleged to have been caused by the motor vehicle accident of October 10, 2010."

Allstate Indemnity sought a declaratory judgment in the district court to declare its duties under the umbrella policy, if any, to Wiebe. The parties both moved for summary judgment. The district court granted Allstate Indemnity's motion and denied Rice's motion, and Rice timely appealed.

## II. DISCUSSION

### A. Standard of Review

"We review a grant of summary judgment de novo." Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, 621 F.3d 697, 707 (8th Cir. 2010).

### B. Insurance Contract Interpretation

"Interpretation of an insurance policy" is a "matter[] of state law." Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir. 2007); see Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree Missouri law controls this diversity case. See 28 U.S.C. § 1332(a). "'In interpreting state law, we are bound by the decisions of the state's highest court.'" Blount, 491 F.3d at 908 (quoting Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006)). When Missouri's "'highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue. Decisions of intermediate state appellate courts are persuasive authority that we follow when they are the best evidence of what state law is.'" Id. (quoting Minn. Supply, 472 F.3d at 534).

"When interpreting the terms of an insurance policy, [the Supreme Court of Missouri] applies the meaning that would be understood by an ordinary person of average understanding purchasing the insurance." Schmitz v. Great Am. Assurance Co., 337 S.W.3d 700, 705-06 (Mo. 2011) (en banc). "[C]lear and unambiguous language in an insurance policy should be given its plain meaning." St. Paul Fire & Marine Ins. Co. v. Lippincott, 287 F.3d 703, 705 (8th Cir. 2002) (interpreting Missouri law and citing Killian v. Tharp, 919 S.W.2d 19, 21 (Mo. Ct. App. 1996)). "If the policy is ambiguous, it will be construed against the insurer." Schmitz, 337

-4-

S.W.3d at 706. "'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions.' Absent an ambiguity, an insurance policy must be enforced according to its terms." Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007) (en banc) (quoting Gulf Ins. Co. v. Noble Broad., 936 S.W.2d 810, 814 (Mo. 1997) (en banc)).

### C.   Allstate Indemnity Umbrella Policy

The Underwoods' umbrella policy defines an "insured person" to mean

> a) **you**, and any other person who is named on the Policy Declarations;
>
> b) any person related to **you** by blood, marriage or adoption who is a resident of **your** household; or
>
> c) any dependent person in **your** care, if that person is a resident of **your** household.

In the district court, Rice argued that Wiebe, as a permissive user, was an "insured person" under the umbrella policy. Rice now declares in her reply brief that she does "not argue that permissive user Howard Wiebe met the technical definition of an 'insured person' under the umbrella policy issued to the Underwoods." Her focus on appeal is directed instead to Wiebe's status as a "permissive user."

Under the umbrella policy's "**Excess Liability Insurance Coverage XL**" (XL coverage), "**Allstate** [Indemnity] will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury**, **personal injury** or **property damage, subject to the terms, conditions and limits of this policy. Bodily injury**, **personal injury** and **property damage** must arise from a covered **occurrence**." Allstate Indemnity provides XL coverage, saying:

**Losses We Cover Under Coverage XL**
**We** will cover an **occurrence** arising only out of:
1.      Personal activities of an **insured person**, including the permissive use of a land vehicle or watercraft owned by an **insured person**.

An "**occurrence**" is "an accident during the policy period, . . . resulting in **bodily injury, personal injury** or **property damage**." There is no question Rice suffered "bodily injury" from "an accident during the policy period," and the October 10, 2010, accident ostensibly fits the definition of an "occurrence" under the umbrella policy's XL coverage.

The disputed question is whether the accident was a "covered occurrence" meriting XL protection. Rice maintains it was, because Wiebe was a permissive user of the Underwoods' vehicle and the accident arose out of such permissive use. This may be true, but it is not the only requirement for XL coverage. See Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009) (en banc) ("Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole.").

The XL coverage obligates Allstate Indemnity to "pay *damages which an insured person becomes legally obligated to pay* because of **bodily injury**." (Italics added).[2] There are no such damages here. Rice declared and agreed in the settlement agreement that "there is no allegation or evidence of negligence or fault on the part of" the Underwoods "regarding any injuries or damages" resulting from Rice's accident. Rice does not offer any plausible legal theory applicable in the state of Missouri that would render the Underwoods legally responsible for Wiebe's negligence. See, e.g., Murray v. Am. Family Mut. Ins. Co., 429 F.3d 757, 760 n.2

_____

[2]At oral argument, Allstate Indemnity's counsel did not direct the court to this clause of the contract. Doing so would have clarified the discussion considerably. Allstate Indemnity's counsel did cite Allstate Ins. Co. v. Hendrix, 476 S.E.2d 644 (Ga. Ct. App. 1996), which relies on a similar clause.

(8th Cir. 2005) ("Unlike some states, Missouri does not generally impose vicarious liability on a vehicle owner for the negligence of another person operating the vehicle.").[3] In short, Rice has offered no factual or legal scenario under Missouri law—nor do we find one—by which the Underwoods would become legally obligated to pay damages to Rice under the facts of this case.[4]

Allstate Indemnity contends a Georgia case is on all fours with this case. In Hendrix, a married couple, Charles and Joyce Buis, permitted Robert Cummings to drive their car. See 476 S.E.2d at 645. While Cummings was driving the Buises' car, a motorcyclist, Hendrix, ran into the car and was injured. See id. As here, Cummings's and the Buises' auto liability policies did not cover all of Hendrix's alleged damages, and Hendrix "claimed that Cummings was an insured under a $1,000,000 personal umbrella policy issued by Allstate to Mr. and Mrs. Buis." Id. The relevant insurance policy provisions are similar to the Allstate Indemnity provisions.[5]

---

[3]Rice proposes that a Missouri statute requiring auto liability policies to insure both the owner and any permissive user of a vehicle impliedly extends the coverage of an umbrella policy to permissive users. See Mo. Rev. Stat. § 303.190.2(2). Rice admits the statute is not directly applicable. As far as we are aware, the Missouri General Assembly has not seen fit to extend the statute in this way, and Rice's proposal does not persuade us the Missouri Supreme Court would amend the statute on some public policy ground.

[4]This is not to say a claimant could not recover based on the negligent acts of the insured persons. For example, if Rice had alleged the Underwoods were liable for her injuries because the Underwoods negligently permitted an obviously intoxicated Wiebe to drive their car, XL coverage possibly could apply. And in some states, the Underwoods potentially could be liable by law.

[5]The Hendrix court quotes the Buises' policy as follows:

**When We Pay**
Allstate will pay when an insured becomes legally obligated to pay for

-7-

The Georgia appellate court reasoned, "When the policy is construed as written, including the 'When We Pay' provision, the language becomes clear and unambiguous." Id. "[T]he policy states that Allstate provides coverage if the insured or a member of his household is legally obligated to pay damages as a result of a loss." Id. "A holding that the insurance company was also required to extend coverage to losses for which the named insured or members of his household were *not* legally obligated would amount to an extension of coverage for which the insurer had not bargained and would, in effect, rewrite the contract." Id.

The same reasoning applies here. Allstate Indemnity's XL coverage provisions explicitly and unambiguously protect against losses *the insured person incurs*—that is, protection for "damages which *an **insured person** becomes legally obligated to pay*."[6] (Italics added). Not every conceivable loss is covered. The XL coverage

---

**personal injury** or **property damage** caused by an occurrence.
  . . . .
**Losses We Cover**
Coverage applies to an **occurrence** arising only out of:

    1. personal activities of an insured including the lending by an **insured** of a land vehicle or watercraft owned by an **insured**.

Id.

[6]Rice argues the umbrella coverage is ambiguous "based on the 'give and take' rule." See, e.g., Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 689 (Mo. 2009) (en banc) ("Missouri law is well-settled that where one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists that will be resolved in favor of coverage."). But nowhere does the XL coverage purport to insure the legal obligations of anyone not identified as an insured person under the terms of the policy. No policy provision granted coverage to Wiebe—no coverage was "given," consequently, no coverage was "taken" away.

delineates a specified, numbered subset of three "covered occurrence[s]" in the clause entitled "**Losses We Cover Under Coverage XL**." Rice would have the umbrella policy's XL coverage insure not only the "legal obligations" of the Underwoods, but also the legal obligations of an unlimited pool of permissive-user tortfeasors. This interpretation contradicts the very purpose of umbrella insurance, as interpreted by the Missouri courts:

> While a primary insurance policy provides "the first layer of insurance coverage," an umbrella policy is used to provide "specific coverage above an underlying limit of primary insurance." 3 Leo Martinez, et al., New Appleman Insurance Law Practice Guide § 29A.02[1] (2012 ed.). The purpose for writing an umbrella policy in addition to a primary policy is "to protect *the insured* against liability for catastrophic losses that would exceed the limits of affordable primary coverage." Id. at § 29A.02[3].

Lero v. State Farm Fire & Cas. Co., 359 S.W.3d 74, 82 (Mo. Ct. App. 2011) (emphasis added). Allstate Indemnity is not responsible for the fact Wiebe had not purchased any excess insurance for his own protection "against liability for catastrophic loss[]." Id.

## III.  CONCLUSION

Because the plain language in the Underwoods' Allstate Indemnity umbrella policy provides XL coverage only for the legal obligations of insured persons, and Wiebe is not an insured person under the umbrella policy, we affirm the judgment of the district court.

BYE, Circuit Judge, dissenting.

The umbrella policy Allstate Indemnity issued to the Underwoods contains an ambiguity which must be construed in Rice's favor, and results in coverage for the

-9-

Underwoods' personal activity of allowing the permissive use of their vehicle by Howard Wiebe. I therefore dissent from the decision to affirm the district court.

Under the section of the umbrella policy entitled "Excess Liability Insurance Coverage XL (XL coverage)," Allstate Indemnity agreed to provide coverage for an occurrence arising out of the personal activities of an insured person, "including the permissive use of a land vehicle . . . owned by an insured person." In other words, Allstate Indemnity defined the covered personal activities of an insured person so as to include the activity of allowing the permissive use of an owned vehicle. It is undisputed the Underwoods owned the vehicle involved in the accident which gave rise to Rice's injuries. It is also undisputed that the person driving the vehicle, Howard Wiebe, had the Underwoods' permission to use the vehicle at the time of the accident, i.e., he was a permissive user. As a consequence, the district court erred when it only examined whether Wiebe – the permissive user – was a named insured under the umbrella policy. Allowing the permissive use of a vehicle was included in the covered personal activities of the named insureds under the umbrella policy, and therefore it was irrelevant that the permissive user was not himself a named insured under the policy.

Allstate Indemnity argues, however, the policy's permissive use provision does not apply to cover Rice's injuries. Relying upon the general insuring agreement under the XL coverage – which states Allstate Indemnity will only "pay damages which an insured person becomes legally obligated to pay" – Allstate Indemnity contends the permissive use provision only applies if a named insured personally incurs legal liability arising from the permissive use of a vehicle owned by the insured person. Allstate Indemnity argues "[f]or example, if an insured person under the umbrella policy incurred liability for the actions of the permissive driver by way of negligent entrustment of the vehicle or some other theory of vicarious liability, the insured person would be afforded coverage under the policy." Appellee's Brief at 16.

In response, Rice contends the general insuring agreement is ambiguous and must be construed in her favor. The policy's general insuring agreement says it is "subject to" the other terms, conditions and limits of the policy. Rice contends the phrase "subject to" means the coverage condition in the general insuring agreement – limiting coverage to damages which an insured person is legally obligated to pay – is subordinate to the unrestricted contractual promise which follows thereafter to cover an occurrence arising out of the insured's personal activity of allowing the permissive use of a vehicle.

To buttress the reasonableness of her interpretation, Rice argues the umbrella policy's reference to "permissive use" has special significance under Missouri law. Under Missouri law, an insurance policy issued to the owner of a motor vehicle is statutorily required to provide coverage not only to the owner, but to "any other person . . . using any such motor vehicle . . . with the express or implied permission of such named insured[.]" Mo. Rev. Stat. § 303.190.2. The Missouri courts generally refer to this section of the Motor Vehicle Financial Responsibility Law (MVFRL) as the "permissive use" requirement. See, e.g., State Farm Mut. Auto. Ins. Co. v. Scheel, 973 S.W.2d 560, 567-68 (Mo. Ct. App. 1998). Rice argues the phrase "permissive use" is therefore a term of art under Missouri law, "well defined by statute, case law, and the insurance industry, and would have a specific meaning for an ordinary insured." Appellant's Brief at 10. Rice claims Allstate Indmenity's specific choice to use the phrase "permissive use" indicates an intent for the umbrella policy to extend coverage to Wiebe as a permissive user in the same way Missouri statutorily requires the Underwoods' underlying automotive policies to extend coverage to Wiebe.

I agree the umbrella policy's general insuring agreement contains an ambiguity which we must resolve in Rice's favor. To begin, I note "[t]he words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to' or 'limited by'" under Missouri law. Homan v. Emp'rs Reinsurance Corp., 136 S.W.2d 289, 302-03 (Mo.

-11-

1939) (citation omitted). In this sense, Missouri's interpretation of the phrase "subject to" is in accord with other courts. See Swan Magnetics, Inc. v. Superior Court, 66 Cal. Rptr. 2d 541, 546 (Cal. Ct. App. 1997) ("The phrase 'subject to' . . . means conditioned upon, limited by, or subordinate to."); see also Carson v. Home Owners Ins. Co., No. 308291, 2014 WL 1510039, at *3 (Mich. Ct. App. Apr. 15, 2014) ("The phrase 'subject to' means 'subordinate' to and 'governed or affected by.' Black's Law Dictionary (6th ed). In other words, the phrase is 'introduc[ing] a subordinate provision,' indicating that the proposition set forth before the phrase can be superseded by a contrary provision in [the provision referenced thereafter]. Garner's Dictionary of Legal Usage (3rd ed), p 616.").

As applied to this umbrella policy, then, the ordinary meaning of the phrase "subject to" means the XL coverage's general insuring agreement can be superseded by a contrary provision in the other "terms, conditions and limits of the policy." As Rice contends, another term in the umbrella policy covers an occurrence arising out of the insured's personal activity of allowing the permissive use of a vehicle, unrestricted by any condition requiring the insured to incur personal liability arising from the permissive use. Thus, where one section of the umbrella policy covers Wiebe's permissive use of the Underwoods' vehicle without limitation, and an arguably subordinate section purports to limit coverage to negligent permissive use (i.e., only covering damages which an insured person becomes legally obligated to pay), there is an ambiguity which we must construe in Rice's favor. See Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 133 (Mo. 2007) ("[I]f a contract promises something at one point and takes it away at another, there is an ambiguity.") (quoting Lutsky v. Blue Cross Hosp. Serv., Inc., 695 S.W.2d 870, 875 (Mo. 1985)).[7]

---

[7]The majority cites Allstate Ins. Co. v. Hendrix, 476 S.E.2d 644 (Ga. Ct. App. 1996), in support of its decision to affirm the district court. Hendrix is inapposite because it did not address the ambiguity of a "subject to" clause in a policy's general insuring agreement.

The umbrella policy's specific reference to "permissive use" buttresses the reasonableness of Rice's interpretation. By statute, Missouri mandates that automotive policies cover the permissive use of an automobile without requiring a showing of negligence on the part of the vehicle's owner. Mo. Rev. Stat. § 303.190.2. "The provisions of that act are indicative of the public policy of [Missouri] to assure financial remuneration [to injured persons] . . . not only by the owners of such automobiles but also all persons using them with the owners' permission, express or implied." Weathers v. Royal Indem. Co., 577 S.W.2d 623, 625 (Mo. 1979). These "coverage provisions are intended to extend, not restrict, coverage afforded and such intention is salutary." Id. at 626 (quoting Hauser v. Hill, 510 S.W.2d 765, 768 (Mo. Ct. App.1974)). As a result, Missouri law favors a liberal construction of permissive use provisions. Id.

Against this background of state law, it is reasonable to believe an insurer issuing an umbrella policy governed by Missouri law would provide coverage for an occurrence arising out of the permissive use of an insured's vehicle without necessarily requiring a showing of negligence on the part of the vehicle's owner. I therefore respectfully dissent.

_____