Filed 4/9/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br>     Plaintiff and Respondent, <br> v. <br> L.H., <br>     Defendant and Appellant. | A168582 <br><br> (Contra Costa County <br> Super. Ct. No. J2100365) |

The juvenile court committed L.H. to a secure youth treatment facility after he pled no contest to committing first degree murder.  On appeal, L.H. challenges the court's rulings as to the maximum term of confinement and the application of precommitment credits.  First, he contends the court incorrectly applied Welfare and Institutions Code[1] section 875 in setting his maximum term of confinement to a date beyond his 25th birthday.  Second, he argues the court erred in applying his precommitment credits against a "theoretical" maximum term of 25 years.  Finally, he claims equal protection principles require that his precommitment credits be applied against a term that does not exceed the date he reaches age 25.  We will affirm the disposition order.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2023, L.H. pled no contest to first degree murder. A detailed recitation of the facts is unnecessary to resolution of the issues before us. Suffice it to say that L.H. and another individual shot at K.H. multiple times, resulting in K.H.'s death.

At the disposition hearing on August 14, 2023, the juvenile court adjudged L.H. a ward of the court (§ 607) and committed him to Briones Youth Academy, Secure Pathway, "for a maximum term of 25 years to life, or age 25, whichever occurs first." After applying 734 days of precommitment credits to the "maximum term of confinement" pursuant to section 875, the court determined that L.H.'s remaining custody time was 22 years and 361 days.

## II. DISCUSSION

### A. *The Juvenile Court Correctly Applied Section 875 in Setting a Maximum Term of Confinement*

#### 1. Additional Background

Commitment to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) used to be " 'the state's most restrictive placement for its most severe juvenile offenders.' " (*In re M.B.* (2024) 99 Cal.App.5th 435, 448 (*M.B.*), quoting *In re Miguel C.* (2021) 69 Cal.App.5th 899, 902.) In committing a ward to the DJJ, the juvenile court was required to set a maximum term of physical confinement (§ 731, subd. (b)), which represented " ' "the outside time limit for a statutory program aimed directly at rehabilitation." ' " (*In re Alex U.* (2007) 158 Cal.App.4th 259, 265.) A ward's actual term of confinement was ultimately determined by " 'certain [DJJ] guidelines' " for discharging a ward

2

(*id.* at p. 262, fn. 1) and "age limitations on confinement in [the] DJJ" (*In re Ernesto L.* (2022) 81 Cal.App.5th 31, 39 & fn. 11 (*Ernesto L.*)).

However, "in 2020 the Legislature passed 'juvenile justice realignment' through Senate Bill No. 823 (2019–2020 Reg. Sess.) (Stats. 2020, ch. 337)." (*In re J.B.* (2022) 75 Cal.App.5th 410, 413, fn 3.)  The purpose of the juvenile justice realignment was "to reduce the number of juvenile offenders housed in state facilities by shifting responsibility to the county level ' "for all but the most serious youth offenders." ' " (*In re D.B.* (2014) 58 Cal.4th 941, 948.)

As part of the juvenile justice realignment, Senate Bill No. 92 (2021–2022 Reg. Sess.) added section 875, which became effective on May 14, 2021. (Stats. 2021, ch. 18, § 12.)  Section 875 allows for youth offenders who would have been committed to the DJJ to instead be committed to a secure youth treatment facility (or SYTF).  (See *In re Tony R.* (2023) 98 Cal.App.5th 395, 406.)  Under section 875, the juvenile court must set a "baseline term of confinement," which "represent[s] the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge." (§ 875, subd. (b)(1).)  Upon expiration of the baseline term, the court must discharge the ward to probation supervision absent certain findings.  (*Id.*, subd. (e)(3).)

Section 875 also directs the juvenile court to set a "maximum term of confinement" in its commitment order.  Subdivision (c)(1) of section 875 provides:

"(c)(1) In making its order of commitment, the court shall additionally set a maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation.  The maximum term of confinement shall represent the

3

longest term of confinement in a facility that the ward may serve subject to the following:

"(A) A ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later. However, if the ward has been committed to a secure youth treatment facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an aggregate sentence of seven or more years, the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later.

"(B) The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses. If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the maximum term of confinement shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code, which includes any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1 of the Penal Code, and Section 11370.2 of the Health and Safety Code.

"(C) Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision."

In this case, after considering the facts and circumstances of L.H.'s offense, the probation reports, and the parties' submissions, the juvenile court determined that L.H.'s maximum term of confinement was 25 years

4

and applied his precommitment credits against that term pursuant to section 875, subdivision (c)(1)(C).[2]

## 2. Analysis

The main issue on appeal is whether the juvenile court correctly applied section 875, subdivision (c) in setting a maximum term of confinement of 25 years, even though subdivision (c)(1)(A) provides that L.H. "shall not be held in secure confinement beyond 25 years of age." L.H. argues that section 875, subdivision (c)(1)(A) prohibited the court from setting a maximum term of confinement to a date beyond his 25th birthday. The People disagree with this interpretation of section 875, contending that the "jurisdictional" age limits in section 875, subdivision (c)(1)(A) constitute a ceiling on the length of a ward's physical confinement separate from the maximum term of confinement set by the juvenile court.

Because resolution of this issue is a question of statutory interpretation, we exercise independent review. (See *People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084.) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. . . . 'If the statute's

---

[2] In his reply, L.H. interprets the juvenile court's commitment order as setting a maximum term of confinement of 25 years of age. While the court stated that L.H. was to be committed to a SYTF "for a maximum term of 25 years to life, or age 25, whichever occurs first," any ambiguity in the commitment order regarding the maximum term of confinement was resolved by the court's subsequent comments. The court said it was "required by law" to apply L.H.'s precommitment credits against the "maximum term of confinement pursuant to" section 875, and it proceeded to apply the credits against a term of 25 years.

text evinces an unmistakable plain meaning, we need go no further.' [Citation.] 'Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.' " (*In re C.H.* (2011) 53 Cal.4th 94, 100 (*C.H.*), superseded by statute on other grounds as stated in *In re Edward C.* (2014) 223 Cal.App.4th 813, 824.)

Applying these principles, we turn first to the text of section 875, subdivision (c)(1), keeping in mind that we must construe each sentence in context with the remainder of the subdivision and with a view of harmonizing the various statutory provisions. (See *C.H.*, *supra*, 53 Cal.4th at p. 100; *In re Do Kyung K.* (2001) 88 Cal.App.4th 583, 587.) There is no dispute here that the first sentence of section 875, subdivision (c)(1) establishes the juvenile court's discretion to determine "a maximum term of confinement" based on the facts and circumstances of the ward's offenses. (See *M.B.*, *supra*, 99 Cal.App.5th at p. 460 ["The parties also recognize the court had discretion under section 875, subdivision (c) to set a maximum term of confinement."].)

The next sentence of the subdivision states, "The maximum term of confinement shall represent the longest term of confinement in a facility that the ward may serve subject to" the conditions enumerated in section 875, subdivision (c)(1)(A) through (C). (§ 875, subd. (c)(1).) Because the immediately preceding sentence establishes the juvenile court's discretion to set a maximum term of confinement, the second sentence, when viewed in context, appears to clarify that the court, in exercising this discretion, is setting a ceiling on the length of a ward's physical confinement. (See *id.*, subd. (c)(1) [the maximum term of confinement "shall represent the longest term of confinement . . . the ward *may* serve" (italics added)].)

6

In examining the language utilized in the second sentence of section 875, subdivision (c)(1), the crucial phrase is "subject to," which L.H. interprets as limiting the length of the maximum term of confinement by all the conditions enumerated in the subsequent subparagraphs, including the age limits at issue. When the second sentence is read in connection with the rest of the subdivision, however, it appears the Legislature intended for the age limits set forth in section 875, subdivision (c)(1)(A) to provide a separate ceiling on the length of a ward's physical confinement. (See *M.B.*, *supra*, 99 Cal.App.5th at p. 461 & fn. 21 [noting that § 875, subd. (c)(1)(A) provides a "separate cap" on a ward's "actual time spent in confinement"].)[3]

To begin with, the "subject to" language is consistent with an interpretation of the subparagraphs in section 875, subdivision (c)(1) as more broadly governing the ward's actual length of confinement instead of the juvenile court's discretion to set a maximum term of confinement. Using the phrase "subject to" indicates that the proposition set forth before the phrase—in this case, "[t]he maximum term of confinement shall represent the longest term of confinement . . . that the ward may serve" (§ 875, subd. (c)(1))—"can be superseded by a contrary provision" appearing after the phrase. (*Allstate Indemnity Co. v. Rice* (8th Cir. 2014) 755 F.3d 621, 628 (dis. opn. of Bye, J.), citing Garner, Dict. of Legal Usage (3d ed. 2012), p. 616; see *Los Angeles County Employees Retirement Assn. v. County of Los Angeles* (2024) 102 Cal.App.5th 1167, 1209, 1204 [" '*subject to* often introduces a provision that contradicts some applications of what it modifies' "], citing Scalia and Garner, Reading Law: The Interpretation of Legal Texts (2012)

---

[3] To date, *M.B.*, *supra*, 99 Cal.App.5th 435 is the only published case to address whether the age limits in section 875, subdivision (c)(1)(A) constitute a separate ceiling on the length of a ward's confinement, though it did so without analysis.

p. 126; *Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 741 [" 'subject to' means 'subordinate to' "]; *Swan Magnetics, Inc. v. Superior Court* (1997) 56 Cal.App.4th 1504, 1511.)  Considering that all three subparagraphs following the "subject to" language limit a ward's actual confinement time, it appears, then, that if the subparagraphs limit a ward's confinement time to a term shorter than that set by the juvenile court in the exercise of its discretion, the shorter term governs the ward's actual confinement time. (§ 875, subd. (c)(1); see *Los Angeles County Employees Retirement Assn.*, at p. 1204 [the "subject to" language " 'merely show[s] which provision prevails in the event of a clash' "].)

Interpreting the subparagraphs in section 875, subdivision (c)(1) as limiting the actual length of a ward's confinement time, and not necessarily the juvenile court's discretion to set a maximum term of confinement, better harmonizes the subparagraphs.  (See *Absher v. AutoZone, Inc.* (2008) 164 Cal.App.4th 332, 342 [statutory "provisions relating to the same subject matter . . . should be harmonized to the extent possible"].)  The second subparagraph limits a ward's confinement time by expressly limiting the length of the maximum term of confinement.  (§ 875, subd. (c)(1)(B).)  The third subparagraph, in contrast, presumes the court has already set the maximum term of confinement "pursuant to this subdivision" and directs the court to deduct precommitment credits, if any, from this term (*id.*, subd. (c)(1)(C)), resulting in a custodial term shorter than the maximum term of confinement set by the juvenile court.  Thus, when read together, these subparagraphs indicate that the purpose of the "subject to" language is to clarify that the subparagraphs, where applicable, govern the ward's actual length of confinement.

Further, the language utilized in the subparagraph at issue indicates that the age limits should not be construed as limiting the length of the maximum term of confinement. Section 875, subdivision (c)(1)(B) states that the "maximum term of confinement shall not exceed" the middle term of imprisonment that can be imposed upon an adult, while subdivision (c)(1)(A) states that the ward "shall not be held in secure confinement" beyond the age limits. The Legislature's use of two different phrases in these subparagraphs should be afforded significance. "[W]hen *different* words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended. And we are required to ascribe significance to every word of each statute we are called upon to apply." (*People v. Jones* (1988) 46 Cal.3d 585, 596, superseded by statute on another ground as stated in *People v. Goodliffe* (2009) 177 Cal.App.4th 723, 731–732.) "Each word of a statute is assumed to have been chosen carefully to impart its own meaning." (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1338.) Thus, the phrase "shall not be held in secure confinement" appears to refer to a separate cap on a ward's actual confinement time. If the Legislature had intended for the age limits to limit the maximum term of confinement, it could have easily said so, as shown by the limitations it expressly included in section 875, subdivision (c)(1)(B). (See also § 875, subd. (b)(2) ["the baseline term of confinement shall not exceed a youth's projected juvenile parole board date"].)

Even if section 875, subdivision (c)(1)'s language is reasonably susceptible of L.H.'s interpretation, his proposed construction would violate at least three other well-accepted principles of statutory interpretation based on extrinsic aids. (*C.H.*, *supra*, 53 Cal.4th at p. 100.) As the People note, one such principle of statutory construction is that courts presume the

9

Legislature intended similar statutory language covering similar subjects to be similarly construed. (*People v. Harrison* (1989) 48 Cal.3d 321, 329.) The People analogize to the statutes governing DJJ commitments, arguing that under the former DJJ scheme, courts treated the maximum term of confinement as a limit on the length of a ward's physical confinement independent of the "jurisdictional" age limits that now appear in section 875, subdivision (c)(1)(A).

Sections 726 and 731 govern the physical confinement of wards committed to the DJJ. Section 726 provides that if a minor is removed from a parent's physical custody, "the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, subd. (d)(1).) The juvenile court may "aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602." (§ 726, subd. (d)(3), (2).)

Section 731 gives the juvenile court discretion to set a "maximum term of physical confinement" that is lower than the "maximum exposure term" established under section 726, subdivision (d). (*Ernesto L., supra*, 81 Cal.App.5th at pp. 41, 34, italics omitted.) Section 731 provides that a ward committed to the DJJ "shall not be confined in excess of the term of confinement set by the committing court. The court shall set a maximum term based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation." (§ 731, subd. (b).)

10

While sections 726 and 731 do not include similar language as that used in subdivision (c)(1)(A) of section 875, section 731, subdivision (b) provides that it "does not limit the power of the Board of Juvenile Hearings [(Board)] to discharge a ward committed to the [DJJ] pursuant to Sections 1719 and 1769." Sections 1719 and 1769, in turn, give the Board the power to discharge a ward from commitment to the DJJ and direct it to do so "upon the expiration of a two-year period of control or when [the ward] attains" a certain age, "whichever occurs later." (§§ 1769, subds. (a)–(b), 1719, subd. (a).) These age limits on the physical confinement of a ward are codified in section 607, the statute that establishes juvenile authorities' jurisdiction over wards. (*In re J.S.* (2024) 105 Cal.App.5th 205, 213; § 607, subds. (c), (h), (i).)

In the context of the DJJ, the age limits have been interpreted as providing a cap on a ward's actual confinement time separate from the maximum term of confinement set by the juvenile court. (See *Ernesto L.*, *supra*, 81 Cal.App.5th at p. 39, fn. 11; *People v. Linear* (1988) 203 Cal.App.3d 508, 511 & fn. 1 ["even if these conduct credits are applied, he will reach his 25th birthday and consequently be released before the expiration of his maximum confinement time"]; *In re R.O.* (2009) 176 Cal.App.4th 1493, 1497 & fn. 3 [holding that the "maximum term of confinement" is a "theoretical maximum period of confinement" because the ward "cannot be confined beyond his 25th birthday" absent unusual circumstances]; *In re Thomas C.* (1986) 183 Cal.App.3d 786, 802 ["when such maximum period, as here, is lengthier than the ceilings set by . . . section 1769, the latter governs"].)

The parallels between section 875 and the DJJ statutes suggest we should construe section 875's age limits in the same way. Section 875 and section 731 use identical language to establish the juvenile court's discretion

11

to set a maximum term of confinement, and sections 726 and 875 limit the maximum exposure in the same manner. (§§ 875, subd. (c), 726, subd. (d), 731, subd. (b).) And, under each scheme, "precommitment credits are to be applied against the potentially lower maximum term set by the court." (*M.B.*, *supra*, 99 Cal.App.5th at p. 467; *Ernesto L.*, *supra*, 81 Cal.App.5th at pp. 41–42; § 875, subd. (c)(1)(C).) Both statutory schemes also recognize that age limits may set an even lower ceiling on the length of a ward's physical confinement. (§§ 731, subd. (b), 875, subd. (c)(1)(A).) Although section 731 does so by deferring to the Board's power under sections 1719 and 1769 to discharge a ward from a DJJ commitment (§ 731, subd. (b)), no similar statutes exist in the SYTF context. This is likely because the juvenile court now has the authority to discharge a ward committed to a SYTF. (§ 875, subd. (e)(3).) In that context, section 875, subdivision (c)(1)(A) appears to serve the same function as section 1769's discharge provisions, as it uses materially similar language as section 1769 and mirrors section 607's age limits on a juvenile court's jurisdiction.[4] (§§ 607, subd. (c), 875, subd. (c)(1)(A), 1769, subds. (a)–(c).) This would also explain the difference in

---

[4] Section 1769 provides, in part, "A person who is committed to the [DJJ] . . . and who has been found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707, shall be discharged upon the expiration of a two-year period of control or when he or she attains 25 years of age, whichever occurs later." (§ 1769, subd. (b).)

The applicable provision of section 607 provides, "The court may retain jurisdiction over a person who is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707 until that person attains 25 years of age, or two years from the date of commitment to a [SYTF] pursuant to Section 875, whichever occurs later." (§ 607, subd. (c).)

phrasing between subdivision (c)(1)(A) and subdivision (c)(1)(B) of section 875.

"The Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.  [Citation.]  Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction." (*People v. Harrison*, *supra*, 48 Cal.3d at p. 329; accord, *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 766.)  In using language parallel to that in the DJJ statutes and section 607, which have been construed as providing two separate ceilings on the length of a ward's physical confinement based on jurisdictional age limits and the maximum term of confinement set by the juvenile court, we presume the Legislature intended to adopt the same construction of the age limits and the maximum term of confinement in the SYTF context.  (§§ 607, subd. (c), 726, subd. (d), 731, subd. (b), 875, subd. (c)(1), 1769, subd. (c).)

Beyond disregarding the similarities between section 875, section 607, and the DJJ statutes, L.H.'s proposed construction would also violate the principle that "[c]hanges in wording and phraseology are presumed to have been deliberately made" by the Legislature.  (*Estate of Simpson* (1954) 43 Cal.2d 594, 600, superseded by statute on another ground as stated in *Estate of Wyman* (1962) 208 Cal.App.2d 489, 492–493; see *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 939–940, superseded by statute on another ground as stated in *In re Marriage of Walker* (2006) 138 Cal.App.4th 1408, 1425.)  An earlier version of section 875, subdivision (c)(1) stated, in part, "[I]f the ward has been committed to a facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face

13

an aggregate sentence of seven or more years, *the maximum period of confinement shall not exceed the ward attaining* 25 years of age or two years from the date of commitment, whichever occurs later." (§ 875, former subd. (c)(1), italics added, as added by Stats. 2021, ch. 18, § 12.) The deletion of the italicized language and replacement with "the ward shall not be held in secure confinement beyond," is strong evidence that the current subdivision (c)(1)(A) of section 875 should not be construed to include the omitted language.[5] (See *Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 634.) We can perceive of no other reason for the change. The purpose was obviously not to remove a redundancy, as the Legislature did not delete similar language in subdivision (c)(1)(B) of section 875. Nor would it have been to clarify that section 875, subdivision (c)(1)(A) limits the length of the maximum term of confinement because the language of former subdivision (c)(1) was already clear on that point.

Finally, we must " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute." ' " (*Lee v. Cardiff* (2023)

---

[5] At the same time the Legislature amended section 875 to delete the italicized language from subdivision (c)(1), it added subdivision (c)(1)(C), which directs the juvenile court to apply precommitment credits against the maximum term of confinement. (§ 875, former subd. (c)(1), as added by Stats. 2021, ch. 18, § 12.) The legislative history of section 875 provides little insight into the purpose of these amendments. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 200 (2021–2022 Reg. Sess.), as amended June 26, 2022 [bill "[i]ncludes clarifying amendments regarding youth commitments"].) "We rely on the legislative history of an ambiguous statute as dispositive only when that history is itself unambiguous." (*Medical Board v. Superior Court* (2003) 111 Cal.App.4th 163, 179.)

94 Cal.App.5th 398, 407; accord, *In re Greg F.* (2012) 55 Cal.4th 393, 410 ["courts are obligated to 'adopt a common sense construction' "]; *In re Eric J.* (1979) 25 Cal.3d 522, 537 [where two possible interpretations of statute are available, court will adopt one that " 'will render it reasonable, fair and harmonious with its manifest purpose' "], superseded by statute on other grounds as stated in *Ernesto L.*, *supra*, 81 Cal.App.5th at pp. 40–41.) "Ultimately, ' "[i]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed." ' " (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 576, italics omitted.)

L.H.'s proposed construction of the "maximum term of confinement" in section 875 would not render it reasonable, fair and harmonious with the purpose of the statute. This is because section 875 requires the juvenile court to apply a ward's precommitment credits against the maximum term of confinement. (§ 875, subd. (c)(1)(C).) If the maximum term of confinement is limited by the jurisdictional age limits, those wards whose physical confinement will be cut short by the age limits will receive even shorter sentences upon the application of precommitment credits, while other wards who committed the same offense under similar circumstances will have their precommitment credits applied to the full confinement term simply because they were younger at the time of sentencing. Thus, L.H.'s proposed interpretation would produce unfair results considering the purpose of awarding presentence custody credits is to equalize the treatment of different individuals convicted of the same offense. (*In re Joyner* (1989) 48 Cal.3d 487, 494.) It is also unreasonable in light of the purpose of the juvenile justice system to rehabilitate the delinquent ward and provide for the protection of public safety. (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1321–1322; *In re Miguel C.*, *supra*, 69 Cal.App.5th at p. 907 [juvenile justice realignment

15

prioritizes rehabilitation].)  "There is simply no reason for the different treatment" here.  (*Gilbert v. Chiang* (2014) 227 Cal.App.4th 537, 552, 551.)  In comparison, the People's proffered interpretation comports with the purposes of precommitment credits and the juvenile justice system because the maximum term of confinement would be based on the ward's offenses (§ 875, subd. (c)(1)(B), (c)(2)) and what is "deemed appropriate to achieve rehabilitation" (*id.*, subd. (c)(1)).

L.H. suggests the setting of the maximum term of confinement would be an idle act if the age limits in section 875, subdivision (c)(1)(A) constitute a separate cap on the length of a ward's physical confinement.  (See Civ. Code, § 3532.)  But this would not be true in every case, as there would be many instances where a ward's maximum term of confinement will end before the ward reaches the applicable age limit.  (§ 875, subd. (c)(1)(A); see *M.B.*, *supra*, 99 Cal.App.5th at pp. 470–471.)  Further, absent the making of certain findings, section 875 directs the juvenile court to discharge a ward from commitment upon the expiration of a baseline term, which may be shorter than the maximum term of confinement, and it permits the court to modify the baseline term based on "the ward's progress in relation to the rehabilitation plan."  (§ 875, subds. (e)(1)(A), (b)(1), (e)(3).)  "In practice, the maximum term of imprisonment rarely determines the actual period of confinement of a ward committed to" secure confinement.  (*In re A.G.* (2011) 193 Cal.App.4th 791, 800.)

When we take into consideration the common meaning of the language utilized in section 875, subdivision (c)(1), the phrasing of subdivision (c)(1)(A) and our obligation to ascribe significance to every word, the parallels with analogous statutes, and the consequences of L.H.'s proposed interpretation, we are compelled to conclude that the age limits found in section 875,

16

subdivision (c)(1)(A) constitute a cap on the length of a ward's physical confinement separate from the maximum term of confinement set by the juvenile court in its order of commitment. Therefore, in this case, the juvenile court did not err in setting a maximum term of confinement of 25 years.

## B. The Juvenile Court Did Not Err in Applying L.H.'s Precommitment Credits

Citing *Ernesto L.*, *supra*, 81 Cal.App.5th 31 and *M.B.*, *supra*, 99 Cal.App.5th 435, L.H. next argues that the juvenile court erred by applying his precommitment credits against the "theoretical maximum confinement time" of 25 years, instead of against the "maximum custodial term," which he defines as the date he reaches age 25. (Capitalization and boldface omitted.) He further contends the application of credits against the theoretical maximum violates the equal protection clauses of the federal and California constitutions because it results in disparate treatment between wards committed to the DJJ and wards committed to a SYTF. We disagree on both counts.

Section 875, subdivision (c)(1)(C) expressly requires the juvenile court to apply precommitment credits against "the maximum term of confinement as set pursuant to this subdivision." Because this statutory language is clear, we must follow it. (*C.H.*, *supra*, 53 Cal.4th at p. 100.) We have already explained why the juvenile court properly applied section 875 in determining a maximum term of confinement of 25 years. Thus, the court did not err in applying L.H.'s precommitment credits against that term.

*Ernesto L.* does not compel a different conclusion. There, this court held that, when a ward is committed to the DJJ, the ward's precommitment credits must be applied against the term *Ernesto L.* called the "maximum

17

custodial term" set by the juvenile court under section 731, subdivision (b) " 'based upon the facts and circumstances,' " instead of against the "maximum exposure term" (or the "theoretical maximum term") set by section 726, subdivision (d)(1). (*Ernesto L.*, *supra*, 81 Cal.App.5th at p. 34.) As mentioned, section 726, subdivision (d)(1) provides that a ward "may not be held in physical confinement for a period in excess of the middle term of imprisonment," and section 731, subdivision (b) allows the court to set an even lower maximum term of physical confinement based on the facts and circumstances of the ward's offenses.

Consistent with our analysis above regarding the parallels between the DJJ statutes and section 875, the *M.B.* court concluded that "the statutes governing SYTF commitments and the application of precommitment credits in that context already do operate in the way *Ernesto L.* determines the statutes should operate in the DJJ context." (*M.B.*, *supra*, 99 Cal.App.5th at p. 466.) To briefly reiterate our analysis, section 875, subdivision (c)(1)(B) provides the same "maximum exposure term" as section 726, subdivision (d), while sections 875 and 731 use nearly identical language to establish the juvenile court's discretion to set a maximum term of confinement at or below the maximum exposure term based on the facts and circumstances of the ward's offenses. (§§ 731, subd. (b), 875, subd. (c)(1).) And both schemes require the application of precommitment credits against the lower maximum term of confinement. (§§ 731, subd. (b), 875, subd. (c)(1)(C).)

Neither *Ernesto L.* nor *M.B.* defined the "maximum custodial term" in accordance with the jurisdictional age limits. To the contrary, the *Ernesto L.* court said the ward's " 'actual length of confinement' " may be " 'at or below' " the "maximum custodial term," in part because of the "age limitations on confinement in DJJ." (*Ernesto L.*, *supra*, 81 Cal.App.5th at p. 39, fn. 11.) The

*M.B.* court similarly held that the age limits in section 875, subdivision (c)(1)(A) represent a "separate cap" on the ward's "actual time spent in confinement." (*M.B.*, *supra*, 99 Cal.App.5th at p. 461, fn. 21.) Thus, the juvenile court properly applied L.H.'s precommitment credits against the maximum confinement term of 25 years, and L.H. has not presented any basis for us to conclude the court erred in doing so.

For the same reasons, L.H.'s equal protection claim fails. The equal protection clause is violated when "the government . . . treat[s] a [similarly situated] group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288.) "The degree of required justification depends on the classification at issue. Distinctions that involve suspect classifications (such as race) or affect fundamental rights are subject to strict scrutiny, and will be upheld only if they are necessary to achieve a compelling state interest. [Citation.] But when 'a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive "rational basis review." ' " (*M.B.*, *supra*, 99 Cal.App.5th at p. 465.) Because section 875, subdivision (c) "directs that, for SYTF placements, precommitment credits are to be applied in the same way *Ernesto L.* held they should be applied in the DJJ setting," there "is no disparate treatment that could give rise to an equal protection problem." (*M.B.*, at p. 467.)

In sum, the juvenile court did not err in applying L.H.'s precommitment credits against the maximum term of confinement of 25 years. (§ 875, subd. (c)(1)(C).)

### III.   DISPOSITION

The juvenile court's August 14, 2023 disposition order is affirmed.

19

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A168582
*People v. L.H.*

A168582/*People v. L.H.*

Trial Court:     Superior Court of the County of Contra Costa

Trial Judge:     Colleen Gleason

Counsel:     Torres & Torres, Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Bridget Billeter, Supervising Deputy Attorney General, Madeline Thomas, Deputy Attorney General, for Plaintiff and Respondent.